349 So.2d 1252 (1977)
STATE of Louisiana
v.
Floyd A. HUTCHINSON.
No. 59333.
Supreme Court of Louisiana.
September 19, 1977.
*1253 Arthur A. Lemann, III, Supervising Atty., New Orleans, Steven Broussard, Student Practitioner, Loyola Law School Clinic, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Floyd A. Hutchinson was charged by bill of information with simple burglary, in violation of La.R.S. 14:62. After moving unsuccessfully to suppress certain physical evidence, defendant entered a guilty plea, reserving his right to appeal the ruling of the district judge denying his motion to suppress. See, State v. Crosby, 338 So.2d 584 (La.1976).
Upon receipt of defendant's guilty plea, the State filed a multiple offender bill, La. R.S. 15:529.1, and the court subsequently found him to be a second offender felon. Defendant was sentenced to serve three years at hard labor in the custody of the Department of Corrections. The sole issue presented by this appeal is the correctness of the district judge's ruling denying defendant's motion to suppress.
On September 19, 1976, Officer Pamela Cobb of the New Orleans Police Department, was summoned to the business establishment of the C & C Rental Company, on Canal Street in Orleans Parish, to investigate a burglary reported by Bobby Clements, one of the business' co-proprietors. Upon her arrival, she interrogated Clements *1254 and the defendant, Floyd Hutchinson, an employee who claimed to have seen the burglar.
While Officer Cobb was questioning these individuals, Jack Duson, another co-proprietor, acting without Officer Cobb's authorization,[*] conducted a search of the premises. Because he suspected Hutchinson of the crime, Duson went to the company's private parking lot in the front of the building and searched the exterior of defendant's van. There was evidence that Duson saw a red grease rag hanging from beneath the vehicle. By getting down on the ground beside the van at this point, Duson was able to observe, on the underside of the chassis, a number of white envelopes protruding from a brown paper bag.
Since the co-proprietors had kept the missing money in white envelopes like those he observed in the brown bag, Duson returned to the company office and informed Officer Cobb of what he had found. Officer Cobb went to the van with Duson, who crawled underneath, retrieved the bag, and handed it to Officer Cobb. Inside the bag were a number of white envelopes containing the stolen money, a pistol, and three lids of marijuana. At this point the defendant was placed under arrest.
Since Duson, on his own initiative, conducted a search as a private citizen, any intrusion resulting from the search alone was private, not public, and therefore beyond the ambit of the Fourth Amendment's protection. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed.2d 1048 (1921); United States v. Goldberg, 330 F.2d 30 (3d Cir. 1964), cert. den. 377 U.S. 953, 84 U.S. 1630, 12 L.Ed.2d 497; United States v. McGuire, 381 F.2d 306 (2d Cir. 1967), cert. den. 389 U.S. 1053, 88 S.Ct. 800, 19 L.Ed.2d 848; People v. Horman, 22 N.Y.2d 378, 292 N.Y.S.2d 874, 239 N.E.2d 625 (1968), cert. den. 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699; People v. Randazzo, 220 Cal.App.2d 768, 34 Cal.Rptr. 65 (1963), cert. den. 377 U.S. 1000, 84 S.Ct. 1933, 12 L.Ed.2d 1050; United States v. Winbush, 428 F.2d 357 (6th Cir. 1970), cert. den. 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157; Cf. State v. Bryant, 325 So.2d 255 (La.1976); State v. Kemp, 251 La. 592, 205 So.2d 411 (1967). Once Duson related the results of his independent inspection to Officer Cobb, she had probable cause to believe that evidence of the crime was located on the underside of defendant's van. Moreover, the fact that a sack apparently filled with stolen currency was precariously affixed to a movable motor vehicle presented exigent circumstances justifying a warrantless seizure of the evidence. See, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Williams, 347 So.2d 231 (La.1977); State v. Hearn, 340 So.2d 1365 (La.1976); State v. Massey, 310 So.2d 557 (La.1975).
Defendant contends, however, that the inspection conducted by Duson was an unreasonable search proscribed by the Louisiana Constitution. We are unwilling to hold that the rights safeguarded by Article I, § 5 of our constitution are merely coextensive with those protected by the Fourth Amendment to the federal constitution, or that private searches and seizures are not within the ambit of protection afforded by our state charter. See generally, Documents of the Louisiana Constitutional Convention of 1973 Relative to the Administration of Criminal Justice, 40th Day's Proceedings August 31, 1973, pp. 599-604 (1976). However, under the facts of this case, we do not find that Duson's search was an unreasonable invasion of privacy.
Duson, a co-owner of the establishment burglarized, independently conducted the *1255 search in question on the premises occupied by his business. Duson did not violate the interior of the van in the course of his search. The stolen money and other evidence was concealed, not inside the van, but merely on the underside of the chassis. There was evidence that a red grease rag hanging from or near the secreted money sack was visible upon a casual observation of the vehicle.
Defendant voluntarily brought his van onto the rental company's property, then affixed the evidence of his criminal conduct to the exterior of his van. Defendant could not reasonably have expected the exterior of his van even its undersides to be free of scrutiny by the owner of the private property upon which he placed it. Compare, State v. Fearn, 345 So.2d 468 (La.1977). Thus, Duson's search did not trench upon an area of defendant's privacy protected by Article I, § 5 of the 1974 Louisiana Constitution.
For the foregoing reasons, the ruling of the district judge denying defendant's motion to suppress was correct. Consequently, defendant's conviction and sentence are affirmed.
SANDERS, C. J., concurs with written reasons.
SUMMERS and MARCUS, JJ., concur.
SANDERS, Chief Justice (concurring).
As the majority notes, it is universally recognized that the Fourth Amendment of the United States Constitution, banning unreasonable searches and seizures, extends only to governmental action. It does not apply to the conduct of private citizens. The United States Supreme Court and other federal courts have spoken many times on this subject. See, e. g., McGuire v. United States, 273 U.S. 95, 47 S.Ct. 259, 71 L.Ed. 556 (1927); Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); 68 Am.Jur.2d, Searches and Seizures, § 13, p. 670.
As late as 1975, in State v. Bryant, La., 325 So.2d 255, this Court held that the protection against unreasonable searches and seizures extended only to state action and not to the conduct of private citizens.
Article 1, Section 5 of the Louisiana Constitution (1974) provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
I find nothing in the language of this section extending the protection to searches by private citizens. In fact, the language is the same as that of the Fourth Amendment with the exception of the addition of the words "invasions of privacy" and the last sentence dealing with standing.
The reference to invasions of privacy does nothing more than make clear that the right protected is that of privacy. This right has long been recognized as the basis of the Fourth Amendment. See, e. g., McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
By its terms, the last sentence of the section deals only with standing, not with the type of search prohibited.
If a drastic departure from long-established principles was intended, it would have been very easy for the drafters of the constitution to so indicate in the section. In my opinion, the language is not there.
Accordingly, I adhere to the view that the exclusionary rule applies only to searches by law enforcement officers and other governmental agents.
For the reasons assigned, I concur in the decree.
NOTES
[*] Duson testified he told the policewoman he was going out to search. But Officer Cobb testified she was not aware of Duson's intention to search. The trial judge apparently believed the testimony of the officer, finding either that Duson did not tell her he intended to search or that she did not hear his statement to her. Moreover, under the circumstances Duson would not have become an agent of the police officer by merely informing her that he was going to conduct a general search of his own premises.