354 So.2d 540 (1978)
STATE of Louisiana, Appellee,
v.
Prince NELSON, Appellant.
No. 60411.
Supreme Court of Louisiana.
January 30, 1978.
Patrick D. McArdle, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
*541 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Donald T. Giglio, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of the theft of a diamond ring worth $850, La.R.S. 14:67, and sentenced to serve three years and four months in parish prison. In appealing, he relies upon one assignment of error. The assignment relates to the introduction over objection of an inculpatory statement allegedly secured as the result of the use of unreasonable force.
Context Facts
At a department store, a clerk showed the defendant two diamond rings. He allegedly failed to return one of them to the clerk.
Two of the store's security guards took the defendant to an upstairs room. The defendant was unclothed, his hands were handcuffed to his rear, and the guards checked the defendant's clothing and person. (A guard testified that they handcuffed him because he resisted the strip search.) The searchers were unable to find the ring.
The defendant put his pants back on and his hands were again handcuffed to his rear. One of the guards then thought to look in the defendant's mouth (he thought that the accused had been mumbling). When the accused opened his mouth at the guard's request, the guard thought he saw a gold object in the right rear of the gums.
The defendant resisted the guards' order to spit out what was in his mouth. The defendant started gagging. One of the guards grabbed the defendant's throat in order to prevent him from swallowing the object he thought he had seen in the accused's mouth.
At that point, the guard testified, the defendant said: "Turn me loose; the ring is stuck in my `goozle pipe;' so, if you turn me loose, I will be able to spit it up."
(This statement is the basis of the assignment of error. It was objected to on the ground, inter alia, that it was obtained by the use of unreasonable force.)
The guard then released the defendant, who began spitting up blood. No object came out of his mouth, however. Police officers arrived shortly thereafter, placed the defendant under arrest, read him his Miranda rights, and took him to jail. Although bowel movements were watched closely for three days, the ring was never found by the state. Also an x-ray of the defendant at the time showed no foreign object in his body.
At the time of the search, the security guards held no commissions from the state or from any governmental body. They were merely personnel employed by the department store to act as security guards.
The circumstantial evidence as a whole would reasonably permit the trial jury to conclude that the accused was guilty of the offense. Nevertheless, without doubt, the inculpatory statement indicating that he had the ring in his mouth was, under the circumstances, substantial evidence contributing to the jury verdict of guilt. If this evidence had been excluded, no testimony directly proves the accused's possession of the missing ring; he could have strongly argued that he was detained and searched solely because of a completely unfounded suspicion by the department store clerk, who had herself mislaid the ring.
The Legal Issue
The essential legal issue is whether the statement was the direct product either of an unlawful search or of the use of unreasonable force.
If the choking and other physical measures used to restrain and search the accused constitute the use of unreasonable force, a statement thereby obtained may be inadmissible because involuntary, whether the primary purpose of the choking and other abuse was to obtain disgorgement of the stolen object or instead was to obtain an admission by the accused that he possessed *542 it.[1] The state cannot use an involuntary admission of culpability by the defendant, however and by whomever obtained, as evidence of the accused's guilt. State v. Glover, 343 So.2d 118 (La.1977). See also La.R.S. 15:451.
We prefer to rest our ruling, however, on the unreasonableness of the (illegal) search by private persons, in the course of which the statement was improperly obtained as a direct consequence of unreasonable force exercised under the circumstances.
The store's security guards, who were not commissioned as police officers, detained and questioned the accused under purported authority of La.C.Cr.P. art. 215, the "shoplifters" statute. This permits "a specifically authorized employee of a merchant" to "use reasonable force to detain a person for questioning on the merchant's premises," when there is reasonable cause (as there was here) to believe that the detained person has committed a theft of the merchant's goods held for sale.
However, even though there may be probable cause for detention and inquiry, the search itself may be unreasonable in method or extent so as to go beyond the statutory authorization. Brasher v. Gibson's Products Company, Inc., 306 So.2d 842 (La.App. 2d Cir. 1975); Annotation, False IMprisonmentShoplifters, 47 ALR3d 998, Sections 9, 10 (1973).
Even had the store guards been commissioned as peace officers, their choking of the accused would present an issue that the search was unreasonable because unreasonable force was used to obtain evidence. State v. Tapp, 353 So.2d 265 (La. 1977). The present private employees, however, were exercising search powers only under a statutory authorization limited to the use of "reasonable "force "to detain a person for questioning." So considered, their search was certainly unreasonable in method and extent: They stripped the suspect of his clothes, handcuffed his hands in back of him, and choked him to force him to disgorge what (they thought) was in his mouth.[2]
The Louisiana Constitution of 1974 provides that each person shall be secured in his person "against unreasonable searches . . . or invasions of privacy." Article 1, Section 5. This constitutional provision further states: "Any person adversely affected" by an unreasonable search shall have standing to raise its illegality. The introductory section of Article I, the Declaration of Rights, declares that the rights enumerated by it (which include the prohibition against unreasonable searches) "are inalienable by the state and shall be preserved inviolate by the state." Article 1, Section 1.
Here, the accused was subjected to an unreasonable search under the color of authority claimed by virtue of a statute that permitted private persons to use reasonable force to detain him. By virtue of this unreasonable search, an inculpatory statement was allegedly choked out of him. He was thereby adversely affected by the unreasonable search, no less than if these private employees had used unreasonable force in their exercise of state-authorized detaining power, in order to violate his person so as to obtain physical evidence illegally.
Accordingly, because the inculpatory statement was obtained as the direct result of the use of unreasonable force in an unreasonable search, we find that the statement was improperly admitted into evidence over his objection. On the assignment of error presenting this issue, we *543 must reverse the conviction and sentence. We remand for a new trial, in accordance with law.

REVERSED AND REMANDED.
SANDERS, C. J., dissents with written reasons.
SANDERS, Chief Justice (dissenting).
I have heretofore expressed the view that the rule excluding evidence from a criminal trial because of an illegal search does not apply to evidence secured by private persons. See, e. g., McGuire v. United States, 273 U.S. 95, 47 S.Ct. 259, 71 L.Ed. 556 (1927); State v. Bryant, La., 325 So.2d 255 (1975); 68 Am.Jur.2d, Searches and Seizures, § 13, p. 670. See also my concurring opinion in State v. Hutchinson, La., 349 So.2d 1252 (1977).
Assuming, however, that a different rule applies here because we are dealing with an inculpatory statement, I am still of the view that the inculpatory statement was admissible.
It is well established that law enforcement officers may apply sufficient pressure to a person's throat to prevent that person from swallowing narcotics to frustrate law enforcement. See State v. Wood, 262 La. 259, 263 So.2d 28 (1972); State v. Young, 15 Wash.App. 581, 550 P.2d 689 (1976); United States v. Harrison, 139 U.S.App.D.C. 266, 432 F.2d 1328 (1970); Espinoza v. United States, 278 F.2d 802 (5th Cir. 1960). The same rule, I think, should apply to prevent a person from swallowing a valuable diamond ring.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Historically, the requirement of voluntariness was based on the feared unreliability of an involuntary statement. McCormick on Evidence, Section 147 (2d ed. 1972); Pugh, Louisiana Evidence Law 284-85 (1974). Here, for instance, the choked individual may have blurted out a false statement concerning the ring in order to avoid asphyxiation.
[2] La.C.Cr.P. art. 215 specifically provides that"The detention [of suspected shoplifters authorized by the statute] shall not constitute an arrest." Subsection A. If it were a lawful arrest, the arresting officer might not only use reasonable force to detain the suspect, La.C.Cr.P. art. 220, but also to seize weapons and incriminating articles incident to the arrest, La.C.Cr.P. art. 225.