454 So.2d 232 (1984)
STATE of Louisiana, Relator,
v.
Earl CLARK, Jr. and Bret K. Verrett, Respondents.
No. K83-1147.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
Writ Denied September 20, 1984.
*233 Edwin O. Ware, Dist. Atty., G. Earl Humphries, III, Asst. Dist. Atty., Alexandria, for defendant-relator.
Michelle Fournet, Small, Williamson & Brocato, Alexandria, for plaintiffs-respondents.
Before CUTRER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
The issue in this case is whether a motion to suppress evidence seized by a private citizen in a prosecution for misdemeanor offenses was properly granted under the exclusionary rule. We hold that the motion was improperly granted.
The facts are: On the evening of August 16, 1983, Earl Ashmore heard several gunshots fired in an area near the site of his partially completed home on which he was working near the community of Glenmora in Rapides Parish, Louisiana. As president of a hunting club having a lease in the area, he was concerned. He thought there might be poaching because he had been hearing gunshots for two weeks prior to this date. He put up his tools and went out on the public road to see what he could find.
As he was driving his pickup along Ashmore Road adjacent to the fenced and posted property of a Mr. Monroe, he observed that a gate, normally wired closed, was open. He stopped and looked closely. It had rained within the hour. There was evidence of the tracks of a three-wheel vehicle leading onto Mr. Monroe's property but not out again. Suspecting that the person or persons who had fired the shots were still on the property, he wired the gate shut and started to leave to notify a wildlife enforcement agent. Before he could leave, he heard a three-wheel vehicle approaching. He entered the property and waited in some tall grass for the three-wheel vehicle to stop at the gate. When the three-wheeler came into view he recognized the defendants and saw a dead doe and a gun lying on Bret Verrett's lap. He also noticed two more guns in the gun rack on the front of the three-wheeler.
At the moment the three-wheeler stopped, Ashmore stepped from his hiding place and grabbed both the young defendants by their shoulders. When one of them made a motion as if to reach for a gun, *234 Ashmore advised against such a move and then took possession of all three weapons.
He then informed the defendants that he was taking the deer, their three-wheeler and their guns to a local wildlife agent who could handle the matter. Ashmore then told the defendants to "hit the road walking" and to go home. The defendants left. Ashmore took the evidence to a deputy sheriff's house who in turn phoned the wildlife office. Two wildlife enforcement agents came and took possession of the property that had been seized by Ashmore.
The two wildlife agents then proceeded to the home of one of the defendants where both of them were found. The defendants were advised of their rights and were issued citations for hunting with an unplugged gun, a violation of LSA-R.S. 56:124(2); hunting and taking deer during closed season, a violation of LSA-R.S. 56:123(A); taking of illegal deer, a violation of LSA-R.S. 56:124(1); hunting without a valid license, a violation of LSA-R.S. 56:103(A); and hunting without a big game license, a violation of LSA-R.S. 56:103(C)(1).
The defendants filed a motion to suppress the physical evidence seized by Ashmore. After a hearing the trial judge granted the motion to suppress. His reasoning was that Ashmore made an unlawful arrest because the offenses were misdemeanors, and there is no authority under Louisiana law for a private citizen to make an arrest for a misdemeanor. He then concluded that the evidence seized was consequently unlawfully seized and had to be suppressed.
We granted a writ on the application of the State and ordered that the complete record be forwarded to this court for a full hearing.
The matter is now before us for a decision.

OPINION
The trial judge applied the exclusionary rule. The State argues that the exclusionary rule does not apply to seizures by private citizens. After a careful examination of the facts as well as the several cases by our Supreme Court touching on this subject, we conclude that the State is correct: the exclusionary rule does not apply to seizures by private citizens. Therefore, the trial judge was incorrect in suppressing the evidence. We reach this conclusion as a result of the following reasoning process.
Article 1, Section 5 of the Louisiana Constitution of 1974 declares in part:
"Section 5. Every person shall be secure in his person, property ... and effects against unreasonable searches, seizures, or invasions of privacy...."
"The universal interpretation of provisions similar to Article 1, Section 5 and the Fourth Amendment ... has been that government intrusion upon any of the elements of personal security specifically listed therein by a search or seizure conducted outside of the judicial process, without prior approval of a judge or magistrate, is prohibited as unreasonable per se." State v. Reeves, 427 So. 2d 403 (La.1982) (dissenting opinion of Justice Dennis).
The seizure by Ashmore, who was neither a governmental agent nor acting under the color of any statutory authority, was not government intrusion. It was the act of a private citizen.
It is well settled that the applicability of the Fourth Amendment to the United States Constitution against unreasonable searches and the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) is limited to cases where the seizure is effected by governmental agencies. State v. Mora, 307 So. 2d 317 (La.1975), remanded for clarification 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, on remand 330 So. 2d 900 (La.1976), cert. den. 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 616 (1976).
Whether the rule excluding evidence from a criminal trial because of an unreasonable seizure applies to evidence seized by private persons, has never been decided by the Louisiana Supreme Court since Article I, Section 5 of the Louisiana Constitution *235 of 1974 came into existence. Earlier, under the Constitution of 1921, the issue was squarely presented in the case of State v. Mora, supra, and answered in the negative. However, in the subsequent case of State v. Hutchinson, 349 So.2d 1252 (La. 1977), Justice Dennis as the organ of the court reserved judgment on the question stating that, although under the Fourth Amendment the rule still holds, under our new Constitutional provision which grants broader protection to citizens than the Fourth Amendment, "[we] are unwilling to hold that ... private searches and seizures are not within the ambit of protection afforded by our State Charter." That was not the basis for the decision validating the seizure, however, as the court found that the search in that case was not unreasonable and based its decision on that finding.
In the only other case where there was a search by a person who was unquestionably a private citizen not acting under color of State law, the Supreme Court again validated the seizure by finding that the search was reasonable, and did not decide the exclusionary rule question. In State v. McCabe, 383 So.2d 380 (La.1980), the defendant, drunk, drove his truck carrying a Doberman pinscher into a residential neighborhood to visit. The dog got loose and the defendant walked down the street, acting strangely. A private citizen, Hall, looked in the truck and discovered a loaded gun, whiskey and drugs. He called the police. The Supreme Court said that the search was reasonable and that "any privacy interest which the defendant may have had was subordinated to Hall's concern for the safety and welfare of his children." The court made the further comment that courts have frequently held that evidence obtained by a private search is admissible where a superior right or interest attaches to the individual conducting the search at that time or place.
Suppressions were ordered in two other cases where the citizen action was found unreasonable and where the citizen was found to have been acting under color of State law. In State v. Nelson, 354 So.2d 540 (La.1978), security guards for a store choked a suspected shoplifter in an effort to make him spit out jewelry thought to be in his mouth. They did not get the jewelry but did get an inculpatory statement. The inculpatory statement was suppressed, the Supreme Court reasoning that the search, made under color of authority of LSA-C. Cr.P. art. 215, was unreasonable in method and extent and violated Article I, Section 5 of the Louisiana Constitution of 1974.
Subsequently in State v. Longlois, 374 So.2d 1208 (La.1979), the Supreme Court suppressed physical evidence when the defendants were arrested by a wildlife and fisheries agent for possession of marijuana. The court concluded that there had been an unreasonable seizure for purposes of Article I, Section 5 of our Constitution. This was based on the determination that the agent acted outside the scope of his authority as a wildlife and fisheries agent in arresting the defendants for possession of marijuana and that the arrest was therefore illegal. The court explained that the arrest could not be validated as a citizen's arrest because a citizen cannot make an arrest for a misdemeanor, possession of marijuana being a misdemeanor. Because the arrest was made "by a special police officer purporting to act under authority of law", the court felt it necessary to suppress the evidence "to discourage police officers, both regular and special, from unreasonably exceeding their lawful authority."
The court in Longlois recognized that the exclusionary rule of Mapp v. Ohio was designed to deter police misconduct in arrest and search and seizure areas and that it is therefore not applicable to action by private individuals. It added, however, that some searches by private individuals may be unreasonable, as in State v. Nelson, supra, and violate Article I, Section 5 of our Constitution.
What we have here was not an unreasonable search; there was no search at all. We do not consider it an unreasonable invasion of privacy. Defendants had no reasonable expectation of privacy in their voluntary *236 exposure of themselves, their guns, and their contraband on somebody else's posted and fenced property shooting illegal deer out of season.
However, when we consider in the light of the above discussed cases whether there was an unreasonable seizure we run into immediate difficulty. Ashmore was not acting under the color of any authority when he made the seizure. He was simply a private citizen who had no authority to make an arrest for a misdemeanor or to get a search warrant. We cannot say that Ashmore's seizure could be justified under the rule announced in State v. McCabe, supra, that evidence obtained by a private search is admissible where a superior right or interest attaches to the individual conducting the search at that time or place. Ashmore had no greater right to be on the posted and fenced lands of another than did defendants. It can hardly be said that his interest as a hunter in enforcing the game laws justifies this as a reasonable seizure. This case cannot be compared to State v. Hutchinson, supra, where it was held there was a reasonable search when the owner of the premises got down on his knees and looked under defendant's van, and merely reported to the police what he saw there in plain view. Also, we cannot say that the seizure was reasonable for Ashmore's personal protection, considering there is evidence one of the defendants made a move as if he was going for his shotgun. It is clear that Ashmore's purpose when he stepped from his hiding place was to seize the evidence.
In short, if the test of the admissibility of this evidence is whether the seizure was reasonable, we would have to find the evidence inadmissible. We are thus compelled to consider the ultimate question posed by the facts of this case and that is whether the exclusionary rule applies to seizures by private citizens.
It is our opinion that Article 1, Section 5 of the Louisiana Constitution does not create an exclusionary rule applicable to the conduct of private citizens. The exclusionary rule is a jurisprudential creature of the United States Supreme Court made applicable to the States through the 14th Amendment. Mapp v. Ohio, supra. The underlying basis for the rule is that exclusion of evidence procured by police misconduct deters police misconduct. That this is the underlying basis of the rule is demonstrated by our own Supreme Court in State v. Longlois, supra, in the following language:
This Court has never had to decide whether evidence should be suppressed when seized pursuant to an arrest made by an officer acting under color of authority, but lacking the same, and which arrest could not be validated under a citizen's arrest analysis. After careful consideration, we must conclude that such an arrest is an unreasonable seizure for the purposes of Article 1, § 5 of our Constitution. We cannot truthfully say the arrest in this case was made by a "citizen" and therefore, the reasoning of Mapp v. Ohio, supra, does not apply. It is clear that the arrest was made by a special police officer purporting to act under authority of law. We believe our holding is necessary to discourage police officers, both regular and special, from unreasonably exceeding their lawful authority. (footnote omitted)
We deem this expression by our Supreme Court to mean that deterence of police misconduct is the basic reason for the exclusionary rule. Absent the deterrent effect of the exclusionary rule, presumably, police misconduct would be a problem. We can think of no reason to similarly apply the rule to seizures by private citizens. This court is not aware that unconstitutional seizures of criminal evidence by private citizens is much of a problem in this country. Therefore there is no reason to create an exclusionary rule to deter it.
The other basis for the application of the exclusionary rule usually given is that it is necessary to preserve judicial integrity. The idea is, judicial integrity requires that we cannot countenance use of evidence seized by State action in violation of the defendant's constitutional rights, in order *237 to convict him. How judicial integrity is preserved by throwing out evidence seized by a well-meaning, courageous private citizen doing, at considerable risk to himself, what he conceived to be his duty as a citizen, would be difficult to explain.
We can conceive of no justification under any of the traditional reasons given for the exclusionary rule to apply it when the seizure occurs at the hands of a private citizen.
While it is true there are some superficial differences between our Article I, Section 5 and the Fourth Amendment, we fail to see how these differences justify holding that the exclusionary rule does not apply to private seizures under the Fourth Amendment but does apply under our Constitutional provision.
For these reasons we conclude that the ruling of the trial court granting the motion to suppress was error. We issue a writ peremptorily setting aside the granting of the motion to suppress and remanding the case for further proceedings.
WRIT GRANTED AND MADE PEREMPTORY; RULING ON MOTION TO SUPPRESS VACATED AND SET ASIDE; CASE REMANDED.