466 So.2d 68 (1985)
STATE of Louisiana, Respondent,
v.
Richard L. COLEMAN, Applicant.
No. 17168-KW.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1985.
Writ Denied April 23, 1985.
Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for respondent.
Before HALL, MARVIN and LINDSAY, JJ.
MARVIN, Judge.
Defendant-applicant seeks our supervisory review of the denial of his motion to suppress photographs, videotapes, and other materials seized in execution of a search warrant of his home in Ruston. The evidence *69 seized led to defendant's being indicted on two counts of indecent behavior with a juvenile and on two counts of pornography involving a juvenile. R.S. 14:81 and 14:81.1. We uphold the district court's denial of that motion.[1]
The evidence was first discovered by defendant's neighbor to whom defendant had given his house key and instructions to care for his home while defendant was on a Thanksgiving trip. While checking the home, the neighbor entered defendant's bedroom, then a bedroom closet, and opened a box in which he found (and later played) a video-cassette tape depicting pornographic and indecent behavior between defendant and the neighbor's seven-year-old daughter. The neighbor later returned to defendant's home and opened another box in the bedroom closet in which he found pornographic photographs of children. The boxes were closed but not locked. The details of this information were included in the affidavit of the neighbor and a police officer for a search warrant after the neighbor contacted police.[2]
Defendant contends that the search by his neighbor was unauthorized, unreasonable, and in violation of LSA-Const. Art. 1, § 5, and that the fruits of that search cannot, therefore, provide the basis for a valid search warrant. See State v. Tapp, 353 So.2d 265 (La.1977); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The search which prompted application for the warrant was not instigated or motivated by any government agent or under color of law. We consider it a private search or a citizen search born of the neighbor's own initiative and suspicion. Our analysis concerns the reasonableness of the citizen's private search and whether LSA-Const. Art. 1, § 5 prohibits the use of evidence initially observed during a private search to support an otherwise valid affidavit for a search warrant.
The neighbor testified at the suppression hearing that defendant had permitted him on other occasions to take defendant's video cassette recorder to his home to view some of defendant's adult pornographic tapes. The neighbor had also been permitted to look at sexually suggestive magazines in defendant's home and was aware that defendant owned a large assortment of such material.
Defendant and his neighbor had exchanged keys in the manner mentioned for several years and had entrusted the care of their homes to each other. On the occasion complained of, defendant says he gave express instructions, or permission, to the neighbor to water defendant's plants and feed defendant's cat. Defendant asserts that his neighbor needed to enter only the kitchen area of his home. The neighbor, however, said that he routinely went into defendant's bedroom to check windows and lights for security reasons. The neighbor further testified that he entered the closet on a "spur of the moment" decision because he suspected misconduct involving his daughter. The affidavit states that the child visited defendant's home for long periods and often seemed disturbed and anxious when she returned home. The neighbor was not able to articulate reasons for his suspicion when he testified at the hearing. The neighbor said that he did not "think" he had defendant's permission to enter the closet and search for such material.
The transcript submitted by defendant-applicant to us supports the conclusion that defendant nurtured and used a "good neighbor" relationship over a period of several years to ingratiate himself with the neighbor of whose actions he now complains. Defendant acknowledges that he knew of no reason why the neighbor or the *70 neighbor's wife would have suspected defendant of any improper conduct and that he did not have any reasons to suspect that the neighbor would search and find what defendant "didn't want anyone to see ..."

APPLICABILITY OF LSA-CONST. ART. 1, § 5 TO PRIVATE SEARCHES
Our supreme court has not declared to what extent LSA-Const. Art. 1,§ 5[3] reaches further than the Fourth Amendment of the United States Constitution. Defendant apparently concedes that the Fourth Amendment does not protect persons from the effects of private searches that would be illegal if performed under color of law. Defendant instead argues, with some support, that our constitution is broader and is more protective of privacy than the Fourth Amendment.
Professor Hargrave's comments indicate that the 1974 Convention favored a stronger and broader protection of the right to privacy.
... [T]he debate on the section supports a desire to go far beyond federal standards and to prevent the use of evidence obtained by private persons in violation of the guarantees of the section. * * *
On the other hand, one can argue that such a far-reaching departure from existing principles was not intended. The committee comments and the statements of committee representatives do not address this point. The convention debate shows little attention to the specific question of suppressing evidence obtained by private persons. Further, though the first sentence in the section contemplates reaching private persons by going beyond the old reference to "searches and seizures" and adding "invasions of privacy," the last sentence of the section, the one more closely connected to suppression of evidence, refers to "a search or seizure conducted in violation of this Section" and does not include a reference to "invasions of privacy."
Hargrave, Declaration of Rights in the 1974 Louisiana Constitution, 35 La.L.Rev. 1, 22-23 (1974).
Our supreme court has agreed, as concerns searches under color of law, that Art. 1, § 5 is more protective than the Fourth Amendment and that we should not "allow [Fourth Amendment] decisions to replace our independent judgment in construing the constitution adopted by the people of Louisiana." State v. Hernandez, 410 So.2d 1381 (La.1982). See also State v. Nelson, 354 So.2d 540 (La.1978); C.Cr.P. Art. 215.1.
This court has also noted the more comprehensive coverage of Art. 1, § 5 in civil actions arising out of detention by security guards or store personnel of suspected shoplifters under C.Cr.P. Art. 215.1. Like Nelson, however, these cases involve detention under color of law. See Allen v. Sears, Roebuck & Co., 409 So.2d 1268 (La. App. 2d Cir.1982), summary judgment reversed, case remanded, 412 So.2d 1095 (La. 1982); Parker v. Sears, Roebuck & Co., 418 So.2d 1361 (La.App. 2d Cir.1982).
In several cases involving private searches the Louisiana Supreme Court has found it unnecessary to consider the constitutional issue because the private search in each case was found "reasonable." The Fourth Amendment of the United States Constitution and LSA-Const. Art. 1, § 5 prohibit only unreasonable searches and seizures. State v. Hutchinson, 349 So.2d 1252 (La.1977); State v. McCabe, 383 So.2d 380 (La.1980); State v. Abram, 353 So.2d 1019 (La.1977).
In the cited cases, the court did not draw a direct analogy to police searches but referred to some of the same factors considered in police searches to determine reasonableness. Each case was decided on its facts and circumstances. The court considered *71 such factors as the defendant's subjective expectation of privacy, the reasonableness of that expectation, and the reasonableness of the citizen's suspicion that provoked the initial private search.
The Hutchinson search was found reasonable because defendant could not have reasonably expected the exterior of his vaneven its undersideto be free of scrutiny by the owner of the land upon which the van was parked. After finding the private search reasonable and the application of Art. 1, § 5 unnecessary, the court stated in dicta:
We are unwilling to hold that the rights safeguarded by Article 1, Section 5 of our Constitution are merely coextensive with those protected by the Fourth Amendment to the Federal Constitution, or that private searches and seizures are not within the ambit of protection afforded by our state charter.
349 So.2d 1254.
The Abram search was found reasonable because defendant had no expectation of privacy against accidental reassignment of his hotel room to a traveling salesman who discovered and reported the drugs in the room.
The McCabe search was found reasonable because defendant's privacy interest in the passenger compartment of his vehicle gave way to the interest of the private person conducting the search for the protection of neighborhood children when defendant appeared drunk and disruptive and had access to his gun on the seat of his vehicle.
The force used in one private search was found unreasonable where security officers in a retail store elicited an inculpatory statement by choking a customer suspected of concealing a diamond ring in his mouth. That search was held to be within the protection of Art. 1, § 5, however, because the security officers acted under "color of authority claimed by virtue of a statute that permitted private persons to use reasonable force" to detain customers suspected of shoplifting. State v. Nelson, 354 So.2d 540 (La.1978); C.Cr.P. Art. 215.1.
Recent decisions of appellate courts, however, have found Art. 1, § 5 inapplicable to purely private searches and seizures. State v. Clark, 454 So.2d 232 (La.App. 3d Cir.1984), writ denied.
Clark sought to suppress the carcass of an illegal deer and deer rifles given to a wildlife agent by a private citizen who entered and hid himself on the property of a third party and caught defendant with the evidence for the purpose of seizing it. There the court said that "if the test of admissibility ... is whether the seizure [by the citizen] was reasonable, we would have to find the evidence inadmissible." 454 So.2d at 236. Writs were denied by the Louisiana Supreme Court, 456 So.2d 1012 (1984), in the face of the square holding of Clark that LSA-Const. Art. 1, § 5, did not extend its protection to evidence seized by a private citizen.
The court again did not reach the issue in State v. Gentry, 462 So.2d 624 (La.1985), because a routine search of a parcel by a common carrier was found reasonable. Gentry had signed a bill of lading in which the carrier reserved the right to inspect a package to insure that its contents were capable of carriage. The parcel, which was declared to contain only documents, was opened when an employee of the carrier noticed a hard square object in the package. The court found that search reasonable and did not add the Hutchinson dicta, quoted supra.
We could avoid the constitutional issue by reasoning that defendant's neighbor was the custodian of defendant's house and could have given police permission to search even though police may not have had independent grounds for a search warrant. We could avoid the constitutional issue also by reasoning that defendant's expectation of privacy against the prying of a nosy neighbor into closed boxes in defendant's bedroom closet was fatally diminished by defendant's nurturing the neighborly relationship and trust for his own illegal reasons.
*72 We do not follow these temptations, however, because it is obvious to us that the law should recognize that any citizen's bedroom closet and closed containers therein should be entitled to a high degree of privacy. Defendant simply did not expressly or impliedly authorize his neighbor to pry through the contents of his closet, which for whatever reason, good or bad, the defendant wanted to keep hidden.
As in Clark, we shall face the issue as if the neighbor had been a burglar who found evidence of another crime while searching for something to steal and who then turned the incriminating evidence or the information over to the police. The neighbor's search into the contents of defendant's closet was simply unauthorized.
The most obvious difference between the Fourth Amendment and that part of LSA-Const. Art. 1, § 5 quoted below is the expanded standing afforded a citizen to challenge unreasonable searches and seizures.

Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court.
Emphasis supplied.
The purpose of this provision, in our opinion, is not to expand the class or kind of search that is subject to challenge, but to expand the class or kind of person who is permitted to challenge a search that is prohibited. See Hargrave, supra, at 23-24. The constitutional provision does not say that
Any person adversely affected by a search or seizure conducted by any person in violation of this section shall have standing to raise its illegality ...
As Professor Hargrave observes, the quoted sentence which is "the one more closely connected to suppression of evidence refers to `a search or seizure conducted in violation of this Section' and does not include a reference to `invasions of privacy' [as does the first sentence of the section]." Hargrave, quoted supra. Our emphasis.
We believe that LSA-Const. Art. 1, § 5 permits use of evidence obtained from some purely private searches to procure an otherwise valid search warrant, even if the private search is found, or assumed, unreasonable. Gentry, Clark, supra.
The primary purpose of the exclusionary rule, whether state or federal, as traditionally explained, is to deter official misconduct by government agencies in the administration of the criminal law. Exclusion of evidence illegally obtained by a private citizen who does not act under color of law obviously does not further this goal. Clark, supra; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
Another recognized purpose of the exclusionary rule is that judicial integrity will be best served by denying the State the use of evidence unconstitutionally obtained or seized from a citizen or from his home. Clark, supra. We do not see how this purpose is served by excluding the evidence complained of and impliedly condemning defendant's neighbor for reporting evidence of the crimes to the police to allow the criminal justice process to perform its intended function of maintaining law and order and deterring self-help and personal vendetta.
We find no error and deny defendant's application for writs at his cost.
APPENDIX

AFFIDAVIT IN APPLICATION FOR SEARCH WARRANT
STATE OF ...
PARISH OF ...
BEFORE ME, the undersigned authority, personally appeared:
[Officer] KAVANAUGH and [the neighbor], who, being first duly sworn, deposed and said:
That [affiants] have good reason to believe and that it is probable that located on/in the premises described as follows: * * * there is now located the following property which is evidence of the commission *73 of an offense against the laws of the State of Louisiana:
... pictures, photographs, negatives, video tapes, diskettes, film, magazines, books, slides, writings, documents, any or all of which has or may have been used to portray, illustrate or describe nude or partially nude children ...
That affiant shows that said property is to be so located because:
Affiant ... Kavanaugh is a sworn officer with the ... Police Department holding the rank of Inspector. [The other] affiant [neighbor] is employed ... [in] local industry and has held this position for the past four years and ten months. [He] resides... with his wife ... and two daughters... age 7 ... and ... age 5 ... and ... ha[s] resided at the above address for approximately five years.
[He] resides next door to [defendant] ... and has known [defendant] for approximately five years. Affiant [neighbor] and [defendant] have had an understanding and arrangement in which one cares for the house and property of the other whenever one of them is out of town. Affiant has a key to [defendant's] residence and has had said key for approximately two years, and [defendant] has keys to Affiant [neighbor's] residence, all as a part of this arrangement. [Defendant] voluntarily supplied Affiant ... with the key to the former's residence in order that Affiant ... could gain entry into [defendant's] residence to feed [defendant's] pet cat, take his mail and newspapers into the ... residence, reset light timers located on the inside of the ... residence in the north-west-master bedroom and living room, water his plants, and make sure that all windows and doors to the ... residence are secure.
Affiant ... became suspicious that [defendant] was somehow involved with his oldest child ... He first noticed that the child was spending a great deal of time at the residence of [defendant]. He further heard his youngest child ... use the word "tail" in referring to the male penis, while in the presence of [defendant]. On this occasion, [defendant] stated to Affiant ... "Have you been educating her?" Further, Affiant ... has noticed on a number of occasions when he has gone to retrieve his daughter ... from the [defendant's] residence, she has seemed anxious and/or disturbed about something. Over the past three years, Affiant ... while in the [defendant's] residence, has noticed that [defendant] collects, possesses and/or maintains a large assortment of sexually explicit material.
Affiant ... was contacted by [defendant] on or about November 16, 1984, and was requested to take care of the [defendant's] residence, as [he] was going out of town. On November 17, 1984, Affiant ... went inside the [defendant's] residence to take care of [his] pet cat and attend to the other duties as previously agreed upon by h[im] and [defendant] as stated above. Because of his earlier suspicions as aforesaid, Affiant... determined that he would look around in the [defendant's] residence to see what he could find. While in the northwest-master bedroom of the residence ... Affiant ... located an assortment of black and white photographs depicting [defendant] engaging in various forms of sexual activity with ... the daughter of Affiant... Specifically, these photographs depict [defendant] fondling the genitals of ... the daughter of Affiant ... These photographs were contained in a plastic file box which was located on the floor of the closet in the northwest-master bedroom. A video cassette tape was found in a cardboard box in the closet, which was removed and played by Affiant ... on a video recorder located in the [defendant's] residence. This video cassette tape depicted [defendant] fondling the genitals of ... Affiant[`s] daughter. Affiant ... also noticed in the closet an assortment of written and pictorial materials depicting and/or describing nude or partially nude children. Affiant ... also found diskettes, slides, negatives, and film in close proximity to the other materials in the closet.
Affiant ... after finding the items as described above, placed them in the approximate position in which he had found them *74 in the ... residence. Affiant ... secured all windows and doors of the residence of [defendant] and left the ... residence. Affiant... returned to his own residence and advised his wife of what he had found. In order to make more certain that the child which he had seen in the photographs and video tape as aforesaid was for sure his child ... Affiant ... and his wife ... determined that he should return to the ... residence and view these materials again. Affiant ... again returned to the [defendant's] residence, reconfirmed his identification of his daughter in the photographs and video tape, secured the ... residence again, and returned to his residence to discuss the matter further with his wife. Affiant ... and his wife agreed that he should contact the authorities.
Affiant ... spoke by telephone with Inspector... Kavanaugh of the ... Police Department and advised the latter of what had happened. [Inspector] Kavanaugh then went to the residence of Affiant [neighbor] and discussed the matter in detail. [Inspector] Kavanaugh, in the presence of Affiant ... and his wife ... interviewed the child ... [She] stated to [Inspector] Kavanaugh that [defendant] had photographed her while she was partially without her clothes; that [defendant] had touched her on her "bottom"; and, that [defendant] had made a movie of her while she was partially without her clothes.
The purpose of the Search Warrant which may issue pursuant hereto is to search for, seize and preserve evidence of criminal conduct.
[Inspector] Kavanaugh wishes to serve this search warrant as soon as possible, and since [Inspector] Kavanaugh does not know when [defendant] will be at home, [Inspector] Kavanaugh requests that the search warrant be authorized for nighttime, Sundays, and Holidays. * * *
NOTES
[1] The State, in response to defendant's writ application, requested that we rule on the merits of the application before trial to avoid a second presentation of the evidence should a later appeal result in a new trial.
[2] The affidavit for the search warrant contains substantially the same evidence adduced at the hearing on the motion to suppress. The affidavit, which we have edited, is made an appendix to this opinion and ruling.
[3] "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."