SHORTESS, Judge.
Roberta M. Marr (defendant) was charged by grand jury indictment with second degree murder, La.R.S. 14:30.1. She pled not guilty and, after a jury trial, was found guilty as charged. Defendant was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. This appeal follows.
FACTS:
The following facts were revealed at trial. Lloyd Hall, defendant’s son, testified he went to his mother’s trailer in Terrebonne Parish on the afternoon of September 13,1990; that when he entered the trailer, she told him she had shot and killed his stepfather who was lying dead in a bedroom; that he tried to convince her to call the police, but she refused, instead suggesting they dispose of the body; that they put the victim’s body in the trunk of his car, and defendant drove that car while he followed in her ear; that they drove to Vermillion Parish, set the car on fire, and drove home; that during the ride home, defendant told him they would not get caught if they invented a story; and that defendant told him to say the victim had picked up a hitchhiker, brought him home, and left with him a few hours later.
The police found the car with the body and telephoned defendant with the news. Subsequently, she was arrested.
ASSIGNMENT OF ERROR NUMBER ONE:
Defendant alleges the trial court erred when it admitted inculpatory statements. Specifically, defendant contends that statements made by Solly Robichaux, Patricia Bourgeois, and Gloria McDougall were inadmissible as inculpatory statements because they were made prior to the commission of the crime and are not inculpatory under Louisiana Code of Criminal Procedure article 768.
*42 On the day of the trial, after the selection of but before the swearing of the jury, a hearing was held on the admissibility of the statements. The first statement consisted of defendant telling Robiehaux and Bourgeois that she was thinking about shooting her husband and that she could get away with it by pleading insanity. The second statement was defendant telling McDougall that she wished John would leave and that when John got drunk one night and passed out, she held a gun to his head but could not fire it. The trial court ruled these statements were inadmissible.
The State filed a supervisory writ application with this court. In State v. Marr, No. 92 KW 0415, slip op. (La.App. 1st Cir. March 16, 1992,) this court reversed the trial court’s ruling stating:
The statements ... are not evidence of other crimes, wrongs, or acts within the meaning of La.C.E. art. 404(B)(1) and, therefore, are not admissible on this basis. Because these statements were made prior to the commission of the crime, they are not “inculpatory” statements for purposes of La.C.Cr.P. art. 768 notice. State v. Brumfield, 329 So.2d 181, 187-188 (La.1976); State v. Robinson, 563 So.2d 477, 483 (La.App. 1st Cir.), writ denied, 567 So.2d 1122 (La.1990). Nevertheless, this fact does not render such statements inadmissible; it simply means that Article 768 notice is not required for the admission into evidence of these statements.
The statements ... constitute admissions by the defendant. A statement which is an admission by a defendant does not constitute hearsay. La.C.E. art. 801(D)(2)(a). These statements are relevant to the issues of intent and identity. The trial court erred in ruling that the prejudicial effect of these statements outweighed their probative value. The correct test under La.C.E. art. 403 is “unfair” prejudice to a defendant. We find no “unfair” prejudice to the defendant in this situation.
In situations where an accused is attempting to establish justifiable homicide as a defense, and he seeks to introduce evidence of prior threats, acts of violence, etc., by the victim, the Louisiana Supreme Court has held that prior difficulties between the defendant and the victim are generally admissible in murder prosecutions, and that the remoteness in time between them and the alleged offense should properly go the weight of the evidence, rather than its admissibility. State v. Martin, 458 So.2d 454, 459 (La.1984); State v. Thibeaux, 366 So.2d 1314, 1317 (La.1978). We see no reason why such a rule would not apply in the instant case, a situation in which the State seeks to introduce admissions by the accused (made at various time intervals before the crime) to prove how or why the instant offense was committed.
Although a pretrial determination of the admissibility of evidence does not absolutely preclude a different decision on appeal, judicial efficiency demands that this court accord a great deference to its pretrial decisions unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result. State v. Ondek, 584 So.2d 282, 292 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). We do not find that our previous ruling was patently erroneous or produced an unjust result. Further, defense counsel does not raise any new grounds alleging error for us to consider. Therefore, we find this assignment of error without merit.
ASSIGNMENT OF ERROR NUMBER TWO:
Defendant alleges the trial court erred by denying her motion to suppress evidence seized as a result of search warrants. Specifically, in her brief, defendant contends her daughter, Connie Hodge, was acting as the sheriff’s agent when she removed carpet cuttings from defendant’s house. Further, defendant contends the information used to obtain the warrants came from Hodge in her capacity as agent for the sheriff. Defendant argues there was no constitutional validity to the seizure of the carpet cuttings and to the other evidence seized as a result of the warrants (photographs of the crime scene and items from the bedroom) and thus the evi *43 dence should be suppressed as fruit of the poisonous tree.
Sergeant Betty Domangue of the Vermillion Parish Sheriffs Office testified at the hearing on the motion to suppress that she never asked Hodge to go into her mother’s house or to look for anything. In determining whether a ruling on a motion to suppress was correct, this court is not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence introduced at the trial of the case. State v. Revere, 572 So.2d 117, 131 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). Hodge testified at trial that defendant gave her a key and asked her to cheek on the house and feed the cats while she was in the hospital. When Hodge went to the house, she saw bloodstains on the bedroom floor.
The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. This amendment has been interpreted to protect individuals from unreasonable government actions. Its primary purpose is to restrain governmental authorities. It is not intended to protect against private trespasses. State v. Revere, 572 So.2d at 131.
The Louisiana Supreme Court has not declared to what extent Louisiana Constitution article 1, § 5, reaches further than the Fourth Amendment to the United States Constitution. However, in State v. Coleman, 466 So.2d 68 (La.App. 2d Cir.), writ denied, 467 So.2d 542 (La.1985), the Second Circuit interpreted Louisiana Constitution article 1, § 5, and found it inapplicable to an unauthorized, private search of the defendant’s bedroom closet by a neighbor who had been instructed to care for defendant’s home while he was out of town.
If the unauthorized search by a neighbor in Coleman did not violate Louisiana Constitution article 1, § 5, the discovery of the dried blood on the carpet by defendant’s daughter and the other information about what she saw, which was the basis for search warrants, did not violate article 1, § 5.
For the reasons herein stated, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR:
In these assignments of error, defendant contends the trial court erred by denying her motions for a new trial and for post-verdict judgment of acquittal.

Motion For New Trial

In her brief, defendant argues that all of the errors committed by the trial court, when added up, require the granting of a new trial. Defendant’s argument, that several trial court rulings fed to prejudicial and reversible errors, is a reference to the other assigned errors addressed herein. Having found no merit to those assignments of error, we likewise find no merit to defendant’s cumulation of errors argument.

Motion for Post-Verdict Judgment of Acquittal

Defendant’s argument that the verdict was contrary to the law and the evidence actually refers to the sufficiency of the evidence. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review, incorporated in article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La. App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
As the trier of fact the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determina *44 tion of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38.
Louisiana Revised Statute 14:30.1(A) provides, in part:
A. Second degree murder is the killing of a human being:
(1)When the offender has a specific intent to kill or to inflict great bodily harm;
[[Image here]]
Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982).
Defendant strongly argued that this case rested solely on circumstantial evidence and maintained:
There was no eyewitness to any events which bear on the guilt of any person for the killing of John Marr. No one heard any gunshots. No one was seen in the trailer at the time of death, which time in any event is unknown. No one was seen firing a weapon. No murder weapon was recovered. In short, only circumstantial evidence was used to convict the defendant.
However, the transcript reveals that this jury heard the following testimony.
(1) Hall testified he went to his mother’s house and she told him she killed his stepfather. Hall testified he tried to convince his mother to call the police, but she refused. Instead, she asked him to help her dispose of the body. Defendant and Hall each drove a car to Vermillion Parish. Once there, defendant and Hall set the victim’s body on fire in the trunk of his car and drove home together in defendant’s car. On the way home, defendant invented the story about a “hippie-looking” hitchhiker leaving with the victim so it would look as if the hitchhiker killed him.
(2) Lieutenant Ronald Vidallia of the Vermillion Parish Sheriffs Office testified Hall told him the victim had been beating his mother and that the victim had pulled a knife on her and she shot him twice. Vidallia further testified Hall told him he helped his mother wrap the body in a shower curtain and then drive to Intracoastal City in Vermillion Parish. Hall told Vidallia that it was defendant’s idea to concoct the story about the hippie hitchhiker.
(3) Sergeant Reginald Reed of the Vermillion Parish Sheriffs Office testified he questioned defendant about her husband after his body was found. Reed testified defendant told him her husband had left home with a “shady-looking character, a hippie-type character with leather jacket, earrings and jewelry and a big wad of money,” and said they were on their way to either Texas or Nevada. Reed testified he heard the conversation between Vidallia and Hall wherein Hall told Vidallia that defendant killed the victim. Hall told Vidallia he helped his mother move the body to Intraeoastal City where they abandoned it.
(4) Diane Singleton was defendant’s cell mate while in jail. She testified defendant told her she shot her husband and her son helped her dispose of the body. Singleton stated that after she told the prosecutor what defendant said, her bond was reduced and she was able to get out of jail.
(5) Solly Robichaux and Patricia Bourgeois, friends of defendant, testified defendant asked to borrow Bourgeois’ car so she could drive to Houston and shoot her husband. Defendant told them she could get away with it by pleading insanity and throwing the gun into the bayou.
(6) Gloria MeDougall, girlfriend of the victim’s brother, testified that, during a conversation with defendant, defendant told her she held a gun to the victim’s head about 30 minutes while he was passed out from drinking, but she could not pull the trigger.
(7) Connie Hodge testified that after the victim’s death, her mother checked into South Louisiana Hospital and asked her to check on her animals and the house. Hodge testified that when she went to her mother’s *45 house to feed the eats, she found dried bloodstains on the bedroom floor and the carpet was stiff.
(8) Defendant testified that her husband, John Marr (the victim), had left Louisiana and she was unsure as to his whereabouts during the summer of 1990. She was served with divorce papers from Arizona during June 1990. Defendant became aware that her husband had a girlfriend in Arizona, and she would often send her money. In July 1990, the victim telephoned defendant and asked if he could come back; she agreed. The victim moved back in with defendant but continued a long-distance relationship with his girlfriend. He alternated living with his brother, who lived nearby, and living with defendant. Defendant testified she and the victim argued frequently. The day before the victim was killed, he and defendant had an argument about money he had wired to his girlfriend. Defendant testified she gave him $100.00 to send, but he sent only $50.00. During the argument, Hall stopped by and began arguing with the victim. Defendant testified that after the victim pushed Hall, Hall grabbed a rifle and fired a shot at him as he was walking down the driveway to his car. The victim was not injured.
Defendant testified that on the morning the victim was killed she went to Morgan City for physical therapy. She arrived home about 3:40 p.m., put her groceries away, and sat down to have a cola. At about 4:40 p.m., she went into the bedroom and found her husband dead. She thought Hall must have killed him. Defendant testified she confessed killing the victim to Detective Calvin Jackson of the Terrebonne Parish Sheriff’s Office to protect Hall. She stated her confession took place in front of Hall. Defendant further testified she subsequently realized Hall needed help, and she refused to take the blame for him anymore.
(9) Detective Jackson, however, impeached defendant’s testimony. He testified he assisted in defendant’s arrest and read her the Miranda rights. He stated defendant never confessed to him that she killed her husband. Jackson testified he questioned both defendant and her son, but they were in separate rooms and defendant never told him she murdered her husband.
Notwithstanding defendant’s characterization of all of the State’s evidence as circumstantial, the record includes Hall’s testimony that defendant told him she had killed his stepfather and Diane Singleton’s testimony that defendant told her she (defendant) killed her husband and her son helped dispose of the body. If these could be considered as admissions, then under Louisiana law, we would consider them circumstantial evidence. If these statements were confessions, however, they must be considered as direct evidence. Louisiana Revised Statute 15:449 provides:
The term “admission” is applied to those matters of fact which do not involve criminal intent; the term “confession” is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt.
In State v. Jones, 451 So.2d 35 (La.App.2d Cir.), writ denied, 456 So.2d 171 (La.1984), the factual situation presented was that a witness testified that defendant told him he had shot someone in Louisiana and shot the person twice with a pistol which he had thrown in a river. The State argued that the statement was a confession; defendant argued the statement was an admission. The Second Circuit held:
The term “admission” is applied to those matters of fact which do not involve criminal intent; the term “confession” is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt. LSA-R.S. 15:449. There, is a broad distinction between the mere admission of inculpatory facts and a confession of guilt. Where a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. An admission is circumstantial evidence for it is merely an acknowledgment of facts from which an inference of guilt can be drawn. A confession is direct evidence for it is an acknowledgment of guilt for which no inference need be drawn. McCormick on Evidence, § 185 (2d Ed. 1972); Wigmore, Law of Evidence, § 25 (3rd Ed.1940).
*46 Applying the articulated rationale to the facts of our case, one clearly sees that defendant’s statements to both her son and Diane Singletary qualify as confessions as both were acknowledgments of guilt from which no inference need be drawn. Thus, they are direct evidence of defendant’s guilt.
Applying the Jackson standard, the direct and circumstantial evidence considered together certainly provided sufficient evidence to support a rational trier of fact’s returning a verdict of guilty beyond a reasonable doubt. The jury must have believed the testimony of the State’s witnesses rather than the testimony of defendant. After a careful review of the record and the evidence, we find there was sufficient evidence to convince rational fact finders that defendant killed her husband and that her son did not, although that is her defense. For the reasons herein stated, these assignments of error are without merit.
PATENT ERROR:
After reviewing this record, we have discovered a sentencing error patent on the face of the record. The trial judge did not give defendant credit for time served when the sentence was imposed. See La.C.Cr.P. art. 880. Accordingly, we amend the sentence to reflect that defendant is to be given credit for time served prior to execution of her sentence. See State v. King, 604 So.2d 661, 670 (LaApp. 1st Cir.1992). Resentenc-ing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTION AND SENTENCE AFFIRMED AS AMENDED; REMANDED WITH ORDER.