774 So.2d 1155 (2000)
STATE of Louisiana, Appellee,
v.
Ronny MUSGROVE, Appellant.
No. 33,977-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
*1157 Carey J. Ellis, III, Louisiana Appellate Project, Counsel for Appellant.
Ronny Musgrove, Appellant, pro se.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Brian L. King, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, CARAWAY and DREW, JJ.
CARAWAY, J.
Defendant was tried by jury and convicted of attempted armed robbery and attempted first degree murder. Defendant pleaded guilty to a multiple offender bill as a second felony offender. He was sentenced to 99 years imprisonment at hard labor without benefit for the attempted armed robbery conviction, and to 50 years hard labor for attempted second degree murder. The sentences were ordered to run concurrently.

Facts and Procedural Background
Ahmad Powell was working at his audio store in the afternoon of March 5, 1999. According to Powell, the defendant, Ronny Musgrove, entered the store. It was the third time that day that Musgrove had been in the store. Musgrove pulled a small caliber revolver from his back pocket and put it to Powell's head. The defendant ordered Powell to "lay it down," cursed, and ordered him to open his safe, pointing to the cash register with his gun. When Powell reached for a gun behind the counter, Musgrove shot him in the back. As Powell fell to the floor, Musgrove ran out of the store.
In spite of being wounded, Powell made his way out of the store and called for help. The shopkeeper next door responded when he heard Powell and drove him to Louisiana State University Medical Center University Hospital ("LSUMC") in Powell's vehicle. The emergency room physician testified that Powell's gunshot wound *1158 to the left rib cage and abdomen was potentially life-threatening. The bullet ultimately lodged in the sacrum. Surgery to remove a blood clot and repair one of Powell's kidneys had to be performed.
Shreveport Police Department Investigator Anthony Rei ("Rei") responded to the attempted armed robbery call. He first contacted the victim while he was at LSUMC, and then worked the crime scene with other police investigators. A surveillance video tape from the store and other evidence was obtained. Eventually, the police received two tips identifying Musgrove as the perpetrator: the first after the surveillance videotape was broadcast on "Crime Stoppers," and the second from a former next-door-neighbor. The second tip identified Musgrove by his street name, "Sugar Bear."
Based on the police investigation, Rei assembled a six man photographic lineup and showed it to Powell six days after the crime. The victim immediately and positively identified Musgrove from the photographic lineup. Powell testified that he had observed the defendant four times before he identified him in the photographic lineup. He remembered the defendant's distinct eyes and nose and the tattoos on both forearms. Additionally, Powell positively identified the defendant at trial as the person who shot him. The store videotape, which corroborated Powell's testimony, was introduced into evidence and played for the jury.
Antonio Smith also testified at trial, positively identifying Musgrove as one and the same person he had observed in Powell's store earlier on the day the crime occurred. Smith stated that Powell was present at that time, and Smith's description of Musgrove's prior actions browsing in the store corroborated Powell's testimony.

Discussion

Sufficiency of Evidence
Through two assignments of error filed by Musgrove, pro se,[1] he urges that the state failed to prove all of the elements of the crime of attempted armed robbery and attempted second degree murder. Specifically, Musgrove asserts that there was insufficient evidence of his identity as the perpetrator of both crimes. He also contends that the use of a dangerous weapon was not proved because none was introduced into evidence linking him to the crimes. Additionally, the defendant argues that the victim's identification of him as the perpetrator from the photographic lineup was prejudicial. The record reflects that the defendant filed a motion for post-verdict judgment of acquittal which was denied by the trial court.
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. That standard, initially enunciated in Jackson and now legislatively embodied within La. C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983); State v. Perry, 612 So.2d 986 (La. App. 2d Cir.1993).
It is always the function of the jury to assess the credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). Where a trier of fact has made a rational determination, an appellate court should not disturb *1159 it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Clower, supra; State v. Thomas, supra; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 So.2d 104; State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
Under Jackson v. Virginia, supra, the state bears the burden of negating any reasonable probability of misidentification in cases where the defendant asserts he was not the perpetrator or he remains silent. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. However, positive identification by only one witness may be sufficient to support a defendant's conviction. State v. James, 33,262 (La.App.2d Cir.3/10/00), 754 So.2d 429; State v. Davis, 27,961 (La.App.2d Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990).
In order to convict a defendant of attempted armed robbery, the state must prove that the defendant, having the specific intent to commit armed robbery, did or omitted an act for the purpose of and tending directly toward the taking of anything of value belonging to another, from the person of another or in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:27 and 64; State v. Young, 27,237 (La.App.2d Cir.8/23/95), 660 So.2d 548.
Second degree murder is a killing that occurs when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, supra; State v. Butler, supra.; see, State v. Milton, 32,735 (La.App.2d Cir.2/1/00), 751 So.2d 440. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). See, State v. Arnold, 30,282 (La.App.2d Cir.1/21/98), 706 So.2d 578.
Based on the testimony presented at trial, the evidence was sufficient to prove beyond a reasonable doubt that the defendant was the perpetrator of the attempted armed robbery and attempted second degree murder. There is no reasonable probability of misidentification in this case. Powell stated he saw the defendant a total of four times on the day of the crimes, including three face-to-face encounters inside the store. In the last encounter, Powell, as the victim of the robbery, was clearly focused on his assailant face-to-face for several seconds before the shooting, and while in the hospital, he was able to give to the police a detailed description of the defendant, including the defendant's very distinct eyes and nose, and his tattoos on both forearms. Contrary to Musgrove's contention, Powell's description of Musgrove as the perpetrator was consistent and accurate long before the time that Powell was presented with the photographic lineup. The lineup procedure itself was never challenged by defendant in the trial court and was conducted properly.[2]
*1160 The testimony of Powell, corroborated by the surveillance videotape and by the testimony of Rei, viewed in the light most favorable to the prosecution, is sufficient proof beyond a reasonable doubt that the defendant had the specific intent to commit armed robbery and the specific intent to kill. The evidence showed that the defendant put a revolver to Powell's head and ordered Powell to open his safe, pointing to the cash register, while he cursed and verbally threatened Powell. Musgrove then fired the weapon at close range when Powell attempted to duck behind the counter. Powell's wound is indisputable proof that the small object seen in the video was in fact a gun. Accordingly, the issues raised by defendant's pro se brief regarding the sufficiency of the evidence are meritless.

Habitual Offender Guilty Plea
After the district attorney has filed the habitual offender information accusing a defendant, the procedure set forth under La. R.S. 15:529.1(D)(1)(a) requires the following:
Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b).
If the defendant desires to plead guilty and admit the prior felony, Subsection (D)(3) of the same statute further provides that the court shall sentence a defendant as a habitual offender when "he acknowledges or confesses in open court, after being duly cautioned as to his rights." Musgrove, in an assignment of error filed by his counsel, now disputes that this procedure was followed when the court received his guilty plea as a habitual offender.
Prior to accepting the defendant's plea of guilty as a second felony offender, the trial court personally addressed the defendant and the following colloquy transpired:
THE COURT: ... The first question is, do you understand by pleading guilty, you give up your right to have a trial or a hearing?
THE DEFENDANT: On the pending charge right here?
THE COURT: On the second felony offender bill.
(Wereupon [sic] a discussion off the record between counsel and defendant was held.)
THE DEFENDANT: Yes, sir.
THE COURT: Let me make sure I am clear. I am talking about the second felony offender bill relating to the previous first felony conviction of possession of Schedule II controlled dangerous substance, that guilty plea occurred apparently on June 19, 1997. And you have a right to a hearing on the multiple offender bill, the second felony offender bill. Do you understand if you plead guilty, you are giving up your right to a hearing on that? Is that correct?
(Whereupon a discussion off the record between counsel and defendant was held.)
THE DEFENDANT: Yes, sir.

*1161 THE COURT: Do you understand that by pleading guilty to that second felony offender bill, you are giving up your right to be confronted at a trial or a hearing by witnesses against you as well as the right to cross examine the witnesses?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that by pleading guilty to that offense, you are giving up your right against compulsory self-examination with regard to the first felony conviction which is possession of Schedule II CDS?
THE DEFENDANT: Yes, sir.
THE COURT: Do you have any questions you want to ask me about those constitutional rights?
THE DEFENDANT: No, sir.
THE COURT: Do you feel like you basically understand those rights?
THE DEFENDANT: Yes, sir.
After advising the defendant of the applicable penalty range, and ascertaining that no promise had been made regarding the sentence to be imposed and that no coercion or intimidation was used to force him to plead guilty, the trial court found the defendant's guilty plea to be free and voluntary and adjudicated him as a second felony offender.
In view of the above, the defendant asserts that the trial court failed to advise the defendant that the state has the burden of proving at a hearing all of the allegations contained in the multiple offender bill. He asserts that this failure to advise that the state must prove its case is reversible error when no other evidence of the prior conviction is presented, citing La. R.S. 15:529.1(D), State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Johnson, 432 So.2d 815 (La.1983); and State v. Poole, 566 So.2d 180 (La.App. 2d Cir.1990).
At a multiple offender hearing, an admission of identity is the equivalent of a plea of guilty. Because at most multiple offender hearings the only factual issue is whether the defendant is the same individual previously convicted of the felony alleged in the bill, it is error to accept a stipulation or a plea of guilty before advising the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1(D); State v. Johnson, supra; State v. Manning, 30,809 (La.App.2d Cir.6/24/98), 715 So.2d 668; State v. Breaux, 599 So.2d 917 (La.App. 4th Cir. 1992).
Considering the three cases cited by defendant, in State v. Poole, supra, the defendant stipulated at the habitual offender hearing to the accuracy of the evidence offered by the state regarding his identity as the defendant in prior crimes. The stipulation was made without the court having advised the defendant of his right against self-incrimination and the conviction and sentence as a habitual offender were vacated. A similar violation occurred in State v. Johnson, supra.
Musgrove also cites State v. Cummings, supra. In that case, the transcript indicated that, although the defendant withdrew his plea of not guilty and admitted to being a second offender, the trial judge never advised him of the allegations in the bill and his right to be tried as to the truth of the allegations. The defendant did not admit that the allegations of the bill were true, nor did the state establish the defendant's multiple offender status by competent evidence. Accordingly, the defendant's multiple offender adjudication and sentence were vacated, and the case was remanded for a new sentencing hearing.
The three cases cited by the defendant must be considered in view of the supreme court's ruling in State v. Harris, 95-0900 (La.5/19/95), 654 So.2d 680, where the court refused to reverse the guilty plea of a habitual offender whose attorney stipulated to his identity as the prior offender. The court said: *1162 Admissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination. State v. Johnson, 432 So.2d 815 (La.1983). Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence." State v. Martin, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the Boykin colloquy which must accompany a valid plea of guilty. Id., 427 So.2d at 1185, n. 7. In the absence of any allegation or showing that the admission was involuntary, compare State v. Johnson, supra, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law.
In the instant case, the defendant did not remain silent throughout the proceedings, and the state failed to present any competent evidence to prove the existence of the defendant's prior conviction, or of his identity as the person previously convicted. Thus, any failure to inform the defendant of his rights cannot be considered as harmless under State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, ___ U.S. ___, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
A review of the record reveals that the trial court went to great efforts to advise the defendant of his rights to a hearing and to remain silent. The prior felony, which was the subject of the habitual offender bill, and the date of the defendant's prior plea for that drug offense were identified by the trial court in its colloquy with Musgrove. Musgrove was informed of his right to be confronted at a trial or in a hearing by the state's witnesses against him, as well as his right to cross-examine the witnesses. We see from the transcript as a whole that the defendant conferred with his defense counsel twice while the trial court advised him of his rights, and that the defendant repeatedly stated that he understood what rights he was waiving by pleading guilty to being a multiple offender. After such consideration, we conclude that defendant was properly advised of his rights, that he understood that the state would be required to prove that he was convicted in the prior drug offense, and that he knowingly and intelligently waived his rights.
As in State v. Harris, supra, the record in this case can be considered as indicating that "the proceedings as a whole accorded the (defendant) fundamental fairness and due process." We find no merit in this assignment of error.

Excessive Sentence
The defendant pled guilty to and was adjudicated a second felony offender with regard to the conviction on count one, attempted armed robbery. As a repeat offender, the penalty range was a minimum of 24.75 years imprisonment, and the maximum was 99 years, without benefit of probation, parole or suspension of sentence. La. R.S. 15:529.1(A)(1)(a). The defendant was sentenced to the maximum term of imprisonment for that conviction, without benefit of probation, parole or suspension of sentence. The sentence for the second count of attempted murder was ordered to be served concurrently. He filed a written motion to reconsider the sentence imposed alleging specific grounds, including failure to consider all mitigating circumstances and excessiveness of the sentence. The motion was denied by the trial court without a hearing. The defendant therefore preserved these issues for consideration on appeal under La.C.Cr.P. art. 881.1.
The defendant asserts that the record does not show that the trial court considered all of the mitigating factors in fashioning his 99-year sentence as a second offender for the crime of attempted armed robbery. In particular, he argues *1163 that his prior felony was not a crime of violence, and that he was only 19-years-old at the time of sentencing. The defendant contends that he is not the most egregious and blameworthy of offenders so as to warrant the imposition of a maximum sentence and that the record fails to support the sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Brisco, 33,179 (La.App.2d Cir.4/5/00), 756 So.2d 644; State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541. Also, in selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Brisco, supra; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Contrary to the defendant's assertion, the record contains an ample showing of the considerations taken into account by the trial court in imposing the sentence. In a sentencing proceeding, the trial court heard testimony from the victim regarding the extent of his injuries, including his pain and suffering, and the residual disability in his left leg. The trial court also reviewed the defendant's juvenile records and a preparole opinion prepared in connection with the defendant's first adult felony conviction. The defendant's juvenile record was noted as extensive, beginning at age eleven and including five arrests and four adjudications for various offenses. The trial court noted that the juvenile court's efforts did not affect the defendant's actions. The trial court found the defendant to have a history of continued criminal activity as an adult, with two felony convictions (unauthorized use of a motorized vehicle and possession of cocaine) and two misdemeanor convictions. The trial court noted the defendant's lack of satisfactory compliance with supervised probation and parole, and his probation officer's recommendation that he not be released on parole. It reviewed the defendant's disciplinary records from the Caddo Correction Center, which reflected the defendant's pattern of non-compliance with rules and authority.
The trial court also noted the very serious nature of the instant crimes, which manifested deliberate cruelty to the victim with the use of a firearm. It observed that the defendant must have contemplated that his criminal conduct threatened and caused harm. Lack of provocation was also noted.
In mitigation, the trial court considered the defendant's social history. It was noted that the defendant was seventeen at the *1164 time of conviction. The trial court noted that the defendant was the father of one child which he does not support and had completed the tenth grade. The defendant's lack of a support system was reviewed by the court.
The reasons articulated by the trial court are adequate to support the defendant's sentence. The defendant acted without justification and caused substantial injury to the victim. The most serious violation of the crime occurred. The defendant has obviously not benefitted from the rehabilitative efforts of the juvenile and criminal justice system. He has shown a disregard for authority and has not presented any matters which would require a reduction in the term of incarceration adjudged by the district court. There is no requirement that the specific factors of age and the nature of the prior conviction be given any particular weight at sentencing. State v. Callahan, supra, State v. Jones, supra. Thus, there was no manifest abuse of the trial court's wide discretion in the imposition of the maximum sentence of 99 years at hard labor, without probation, parole or suspension of sentence, for the conviction of attempted armed robbery as a second felony offender. This argument is without merit. The sentence does not shock our sense of justice.

Error Patent
The defendant's final pro se assignment was a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556.

Conclusion
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] (1) Appellant's conviction must be reversed because it was based upon constitutional (sic) insufficient evidence; when Appellant's Bill of Information failed to give the essential elements of Counts 1(sic) and two; and (2) Whether defendant-appellant (sic) State and Federal Constitutional Rights were violated when he was mistakenly idenfify (sic) as the perpetrator of attempted armed robbery and attempted second degree murder.
[2] The defendant argues, pro se, that the victim's identification from the photographic lineup was prejudicial without stating any particular flaw in the procedure. A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (La.1987); La.C.Cr.P. art. 841. The defendant failed to move to suppress evidence prior to trial under La.C.Cr.P. art. 703. Also, the record reflects that the defendant offered no contemporaneous objection to admissibility of the photographic lineup at trial, and therefore he did not preserve this issue for appellate review. State v. Cressy, supra; State v. O'Neal, supra; La.C.Cr.P. art. 841.