920 So.2d 866 (2005)
STATE of Louisiana, Appellee,
v.
Ronnie Deon RUSSELL, Appellant.
No. 40,526-KA.
Court of Appeal of Louisiana, Second Circuit.
January 27, 2005.
*867 G. Paul Marx, Lafayette, Mary Lee Harried, Shreveport, for Appellant.
Ronnie Deon Russell, Pro Se.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Lea R. Hall, Jr., Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and MOORE, JJ.
WILLIAMS, J.
The defendant, Ronnie Deon Russell, was charged by bill of information with armed robbery with a firearm, in violation of LSA-R.S. 14:64 and 14:64.3. The matter proceeded to trial before a twelve person jury which found the defendant guilty as charged. Thereafter, the trial court adjudicated the defendant a second felony offender and sentenced him to serve 99 years at hard labor, without benefit of parole, probation or suspension of sentence. The defendant appeals his sentence. Finding no error, we affirm.

FACTS
On April 10, 2004, at approximately 4:30 a.m., the defendant robbed Marilyn Adcock, the front desk clerk at Royal Inn, at gunpoint. The defendant was a former employee of the motel. Although he wore a mask during the robbery, Ms. Adcock recognized the defendant's voice, eyes, body build and clothes. Ms. Adcock testified that on two prior occasions, the defendant had pretended to rob her "as a joke." She stated that he had "run around the snack machine the same way he did this night ... and throw [sic] his hands up there and say, `Give me your money.'" The defendant's fingerprints were found *868 on an envelope that had been kept under the money tray in the cash register. The envelope had fallen to the floor during the robbery. The hotel manager testified that the defendant would not have had access to the register or the envelope in the scope of his employment.
Within days of the armed robbery, police officers, pursuant to a search warrant, searched the residence of the defendant's mother. During the search, the officers found a full face skeletal Halloween mask in the defendant's bedroom. During the trial, Ms. Adcock identified the mask as similar to the one worn by the perpetrator of the robbery. She also testified that she recognized the tennis shoes and jacket worn by the offender as items the defendant had previously worn to work.
Following a jury trial, the defendant was convicted as charged. Subsequently, the defendant was adjudicated a second felony offender.[1] The trial court sentenced the defendant to serve 99 years at hard labor without benefit of parole, probation or suspension of sentence. The defendant filed a motion to reconsider, contending the sentence was excessive. The trial court denied the motion.

DISCUSSION
The defendant contends the trial court erroneously reviewed documents and records outside of the record in this case to determine his sentence. Specifically, the defendant claims the trial court erred in relying upon prison disciplinary reports and confidential juvenile records in imposing sentence.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64(B). Upon adjudication as a habitual offender, if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. LSA-R.S. 15:529.1(A)(1)(a). As stated above, the trial court imposed a sentence of 99 years at hard labor, without benefit of parole, probation or suspension of sentence.
A trial court has wide discretion to impose a sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Musgrove, 33,977 (La.App.2d Cir.12/15/00), 774 So.2d 1155, writ denied, 01-0356 (La.9/28/01), 798 So.2d 112; State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
In selecting a proper sentence, a trial judge is not limited to a consideration of the defendant's prior convictions, but may properly review all of his prior criminal activity. State v. Bright, 39,003 (La. App.2d Cir.10/27/04), 886 So.2d 1183; State v. Brisco, 33,179 (La.App.2d Cir.4/5/00), 756 So.2d 644; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La. App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d *869 979. Offenses committed by a defendant while a juvenile may be included in the presentence investigation and considered in the sentencing phase. LSA-C.Cr.P. art. 875(C); State v. Coleman, 574 So.2d 477 (La.App. 2d Cir.1991).
In the instant case, when imposing sentence, the trial court noted that when the defendant testified at trial, he denied all allegations of the crime and that he had made a telephone call the night before trial urging two witnesses not to testify. However, a recording proved that the defendant had, in fact, made the telephone call. The trial court reviewed the presentence investigation report ("PSI") which included the victim's statements of the impact of the crime on her life. Additionally, the trial court found "particularly disturbing" the fact that the defendant had been arrested for armed robbery on two prior occasions, and the charges were ultimately dismissed. During the presentence investigation, when questioned about the two armed robberies, the defendant stated that his "homeboy, Elliot Bright, took all those charges for me."[2]
In addition, the trial court pointed out that the defendant had an extensive juvenile criminal record, which began at the age of 13. The trial court also considered the defendant's criminal history as outlined in the PSI, including the instant conviction, the conviction for possession of cocaine, which was used as the underlying offense for his adjudication as a second felony offender, charges in the Shreveport City Court, dismissed charges of armed robbery and possession of a firearm by a convicted felon, convictions for two counts of simple battery and a conviction for assault in the state of Texas. Additionally, the trial court also discussed the defendant's social history as described in the PSI. The trial court reviewed an evaluation by Dr. Paul Ware, a psychiatrist, of the defendant's mental health and disciplinary records from the Caddo Correctional Center. The records included reports of the defendant fighting with other inmates.
The trial court stated that there was an undue risk that the defendant would commit another crime if given "any lenient sentence." It stated that the defendant was in need of correctional treatment or a custodial environment, and that a lesser sentence would deprecate the serious nature of the defendant's crime. The trial court further stated that the defendant's conduct manifested deliberate cruelty to the victim, that the defendant knew or should have known that the victim was particularly vulnerable due to ill health or advanced age, and that defendant used "special knowledge" of the crime scene that he possessed "because he worked there previously." Mitigating factors discussed by the court included the defendant's young age, his "very, very nice great aunt" and his mental health issues.
The defendant does not specifically argue in this court that the 99-year sentence imposed is excessive. Rather, as stated above, he contends the trial court erred in referring to his juvenile record and his prison disciplinary records.
Defendant's argument is without merit. During the presentence investigation of a defendant convicted of a felony, the trial court may make a written request of any juvenile court for an abstract containing only the delinquent acts of a convicted defendant currently before the requesting judge. LSA-C.Cr.P. art. 875(C)(1). Here, *870 the trial judge stated that he supplemented the PSI with minutes obtained from the juvenile court. He listed four juvenile docket numbers and the resulting adjudications and dispositions. It is clear from the record that the trial judge respected the confidential nature of the juvenile records and did not reveal any specific factual information with regard to the allegations or the adjudications of delinquency. Thus, in accord with LSA-C.Cr.P. art. 875 and Coleman, supra, the trial court properly considered defendant's multiple juvenile delinquent acts in imposing sentence.
The trial court's consideration of disciplinary records from the Caddo Correctional Center was also proper. In State v. Musgrove, supra, this court noted that the trial court had reviewed the defendant's detention disciplinary records "which reflected the defendant's pattern of non-compliance with rules and authority." Id. at 1163. Similarly, in State v. Ball, 32,497 (La.App.2d Cir.12/15/99), 748 So.2d 1239, writ denied, 00-0385 (La.10/6/00), 770 So.2d 360 and State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, this court affirmed the defendants' sentences, noting the trial court's reference to prison disciplinary records during sentencing. The defendant's arguments are without merit.
Moreover, although the defendant does not argue in his brief to this court that his sentence was excessive, in his motion to reconsider filed in the trial court, he contended the sentence was "constitutionally excessive because the Court failed to consider all other mitigating circumstances."
In cases where a defendant fails to file a motion to reconsider sentence pursuant to LSA-C.Cr.P. art. 881.1 or merely urges that the sentence is excessive, this court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Park, 30,394 (La.App.2d Cir.2/25/98), 707 So.2d 1058. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Musgrove, supra; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
The defendant has not provided the trial court or this court with any facts to support his claim that he should have received a lesser sentence. During the sentencing hearing, Mary Williams, the defendant's great aunt, urged the trial court to consider the minimum sentence for the defendant stating, "He is not a bad person," and "He [has] a good heart." She stated that when defendant was nine or ten years old, he lived with her "for a good while," and during that time "he did everything I asked him to do."
We find that the reasons articulated by the trial court are more than sufficient to support the defendant's sentence. The defendant committed a violent crime, using a firearm, and he has been adjudicated a second felony offender. It is apparent from a review of the defendant's criminal history that he has not benefitted from the *871 rehabilitative efforts of the criminal justice system. Moreover, the evidence at trial established that the defendant robbed the clerk of the motel at gunpoint with the threat of death or great bodily harm. He shoved her, and when she fell, he proceeded to drag her into a back room.
We find no abuse of the trial court's discretion in imposing sentence. There is nothing in this record to suggest that this ninety-nine-year sentence for this second felony offender is grossly out of proportion to the seriousness of the offense, nor does it shock this court's sense of justice. Thus, the defendant's sentence is not constitutionally excessive.

CONCLUSION
For the foregoing reasons, the defendant's sentence is affirmed.
AFFIRMED.
NOTES
[1] On July 18, 1997, the defendant pled guilty to the charge of possession of a Schedule II controlled dangerous substance, i.e., cocaine.
[2] Upon investigation, the probation officer discovered that Elliot Bright and the defendant were co-defendants on two counts of armed robbery for which Bright was convicted and the charges against the defendant were dismissed.