962 So.2d 459 (2007)
STATE of Louisiana, Appellee,
v.
Robert HORTON, Appellant.
No. 42,199-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
Rehearing Denied August 9, 2007.
*461 Stephen A. Glassell, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, J. Dhu Thompson, William Edwards, Assistant District, Attorneys, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
The defendant, Robert Horton, was charged with pornography involving juveniles, a violation of La. R.S. 14:81.1. After a jury trial, he was found guilty and sentenced to seven years at hard labor without benefit of probation, parole, or suspension of sentence. He appeals his conviction and sentence. For the reasons set forth below, we affirm.

FACTS
On July 24, 2004, Horton took his computer (the tower portion containing the hard drive) to Best Buy in Shreveport, Louisiana. He instructed a computer technician there, Christopher Stoll, to install a new hard drive, but not to remove the old hard drive; he also agreed to a suggestion that the computer be physically cleaned. According to Stoll, as he began to work on the computer he found that the power button sometimes did not function, the CD-ROMs were not working correctly, and the monitor was "flickering and shaking." Stoll indicated that after installing the new hard drive, he followed what was termed "post-op procedure" to see if he could determine what was causing the problems. He admitted that this was not necessary in order to install the new hard drive, but explained that Best Buy wanted to make sure that the computer would work "a couple of weeks down the road at least."
During this testing procedure, Stoll decided to view an image from his own pen drive (a small stick-like storage device that plugs in a USB port). Stoll indicated that this was a common procedure used by technicians at Best Buy in order to find problems. In order to do this, he opened the MS Paint program found on all Windows computers. When he opened MS Paint, a default picture directory automatically opened "My Pictures," and Stoll saw six thumbnail pictures of nude children, some of whom were engaged in sexual acts. Stoll then alerted Best Buy employees Shawn Smiley and Brandon Jones. They decided to call the police.
The Caddo Parish district attorney's investigator, Mark Fargerson, an expert in forensic computer analysis, responded to the call. Smiley showed Fargerson the images they had discovered. Fargerson viewed additional images as well, and concluded that many of the images constituted child pornography. He recorded specific information concerning the computer and gave the information to Detective Collette Kelly, and she obtained a search warrant for the computer. The computer was seized and delivered to Fargerson, who performed a forensic search. He reported these results to Kelly, who then obtained a search warrant for Horton's house.
*462 The "My Pictures" folder in Horton's computer drive contained over 100 pages of pornography involving juveniles. Additionally, over 300 VHS tapes of adult pornography were seized from Horton's home, along with CD-ROMs and computer diskettes. One diskette, labeled "My Favorites" included pornography involving juveniles.
Horton challenged the private search of his computer by the Best Buy employees, and moved to quash the bill of information that charged him with pornography involving juveniles, claiming that the statute, La. R.S. 14:81.1, was unconstitutionally vague and overbroad. The trial court denied both motions.
The two Best Buy employees who discovered the images, Stoll and Smiley, testified at trial to the factual account recited above. Fargerson, who qualified as an expert in computer forensic analysis, testified concerning the pictures found on Horton's computer and his role in obtaining the search warrants, preparing his report on his findings from forensic analysis of the computer, and participating in the search of Horton's house. Fargerson's testimony established how images are downloaded from the internet, and that the images in this case were downloaded over a period of several years, thereby proving that Horton did not download the pornographic images of juveniles by accident.
Although Horton did not dispute that he had pornographic images of juveniles, Dr. Ann Springer, a pediatrician from the Louisiana Health Science Center in Shreveport, testified as an expert concerning the ages of the children in the computer images. She stated the images involved children from ages less than one year old up to the teen years participating in oral, vaginal, and anal sex with adults.
Detective Collette Kelly testified concerning the obtaining of the search warrants and the search of Horton's home. Horton does not contest the chain of custody of the evidence in this case. Nor has he attempted to attack the validity of the findings of Det. Fargerson concerning what was on his computer or the testimony of Fargerson and Kelly concerning what was found at his home.
The defense called only two witnesses, Kier Karlson and Mary Salvail. Both were co-employees of Horton at the Caddo Parish Office of Family Support, and both essentially testified that Horton did not have good computer skills. They indicated that he had problems using his computer at work, and that they had never seen any type of pornography on his computer at the workplace. On the other hand, Mr. Karlson did indicate that he had seen some adult pornography on Horton's home computer along with other pictures that were not pornographic. At the conclusion of Ms. Salvail's testimony, the defense rested.

DISCUSSION
By his first assignment of error, defendant alleges that the district court erred in denying his motion to suppress evidence obtained from the search of his computer which was subsequently used to obtain a warrant for the search of his residence. He contends that his right to privacy under Article I, Section 5 the Louisiana Constitution was violated by the unauthorized private search of his computer by the Best Buy employees who, in turn, reported their findings to police. Horton's counsel suggests that the court should "set some guidelines in what is a permissible private search by a computer technician." Horton further argues that Fargerson exceeded the scope of the private search by the Best Buy employees because he "did additional procedures in opening and enlarging the photos," citing U.S. v. Runyan, *463 275 F.3d 449 (5th Cir.2001) and U.S. v. Barth, 26 F.Supp.2d 929 (W.D.Tex.1998).
Horton contends that the unauthorized private search was an unreasonable invasion of his client's privacy. The Best Buy employees testified that the work that the defendant requested, i.e., to install and format an additional hard drive and clean the computer, did not require the employees to look into Horton's file folders. Although the defense acknowledges that it was unable to establish a connection between the employees and the police, counsel characterized the Best Buy employees, Stoll and Smiley, who carried the monikers "Counter Agent" and "Double Agent" as "police wannabees" who went into the computer for the purpose of searching for pornography in Horton's private computer files. Horton contends that the court should set guidelines for computer technicians that include a guideline that a technician cannot look into any folders or files on a computer without the express consent of the owner of the computer. Under such guidelines, he argues, the instant search would fall.
In addition to suppression of evidence seized from the computer, Horton argues that evidence from the search of his residence should be suppressed as "fruit of the poisonous tree."
The state argues that "private searches, no matter how intrusive, are not subject to be [sic] suppressed," citing our opinion in State v. Coleman, 466 So.2d 68 (La.App. 2 Cir.1985), writ denied 467 So.2d 542 (La. 1985). Alternatively, it implicitly argues that the private search in this case was reasonable because the discovery of the child pornography was inadvertent. Finally, the state contends that Fargerson did not unlawfully exceed the scope of the prior private search when he went to Best Buy to examine the reported images. Fargerson simply examined more thoroughly the evidence inadvertently discovered, which it contends is permissible, citing U.S. v. Runyan, supra. Alternatively, the state claims that the search warrant was based upon the images that appeared on the first page inadvertently discovered by the Best Buy employees.
Trial courts are vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Long, 2003-2592, (La.9/9/04), 884 So.2d 1176, 1179. (citations omitted).
In this instance, the trial judge denied the defendant's motion to suppress with a rather short ruling, giving a general reason for her denial of the motion. The judge stated that the motion is not supported by the law or the evidence and that she relied heavily on Runyan, supra. She agreed with the characterization of the discovery by the Best Buy employees as a "private search."
Our review of the facts and testimony in this case support the trial court's conclusion that this was solely a "private search." That is to say, there is no merit to Horton's argument that the Best Buy employees were acting under color of law or in connection with the police. Their company monikers, "Counter Intelligence Agent" or its acronym, "CIA," and "Double Agent," were nothing more than the company's way to humorously distinguish those computer technicians who work at the counter from those who do "at home" as well as "in store" computer repairs. In short, the evidence does not show that the employees were "police wannabees" as characterized by Horton as an attempt to depict them as over-zealous citizens acting as police.
The testimony and other evidence adduced compels us to conclude that the *464 discovery of the unlawful pornographic images by the Best Buy employees was inadvertent and unexpected. This constituted a "private search" only to the extent that it was not under color of law or in any way connected with state authority. Thus, the sole question is whether Article I, Section 5 of the Louisiana Constitution, that protects a person's right to privacy, extends to the "private search" in this case.
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. Art. I § 5. It is undisputed that the guarantee of the right to privacy contained in the Louisiana Constitution affords more stringent protection of individual liberty than the Fourth Amendment to the Federal Constitution. State v. Smith, 99-2015 (La.7/6/00) 766 So.2d 501, 99-2019 (La.7/6/00), 99-2094 (La.7/6/00), 99-0606 (La.7/6/00); State v. Perry, 610 So.2d 746, 756 (La.1992).[1] Whether this more stringent protection of individual liberty extends to private searches is not entirely clear. The Louisiana Supreme Court has not expressly decided in a criminal context whether the state constitution may prohibit certain unreasonable searches by private persons in a criminal prosecution. See State v. Hutchinson, 349 So.2d 1252 (La.1977); State v. McCabe, 383 So.2d 380 (La.1980). In Hutchinson, the court stated that it was "unwilling to hold that the rights safeguarded by Article I, § 5 of our constitution are merely coextensive with those protected by the Fourth Amendment to the federal constitution, or that private searches and seizures are not within the ambit of protection afforded by our state charter." Id. at 1254. Under the facts of that case, however, the court concluded that the search was not an unreasonable invasion of privacy, thereby implying that an "unreasonable" private search might be protected.
On the other hand, this court and other appellate courts in the state have held that "Article 1, § 5 permits use of evidence obtained from some purely private searches to procure an otherwise valid search warrant, even if the private search is found, or assumed, unreasonable," since "the primary purpose of the exclusionary rule . . . is to deter official misconduct by government agents." State v. Coleman, supra. (Emphasis on "some" added); State v. Clark 454 So.2d 232 (La.App. 3 Cir.1984). Our state supreme court denied writs filed by defendants after each of these appellate court rulings.[2]
In Coleman, supra, the defendant asked his neighbor to feed his plants and his cat while he was away during the Thanksgiving holidays. During that time the neighbor went into the defendants bedroom and looked through his closet where he found a box containing some pornographic video cassettes. Having viewed some of the defendant's pornographic videos in the past, *465 the neighbor viewed the cassettes and discovered what he had lately suspected  there was video footage of his seven-year old daughter engaging in pornographic and sexual acts with the defendant. He subsequently gave the information to police in order for them to obtain a search warrant.
Forgoing the "reasonable expectation of privacy analysis," we assumed that a person has a high expectation of privacy regarding his or her bedroom closet, and that the neighbor's search into the defendant's closet in this case was "unauthorized." We faced squarely the issue of whether Article I, § 5 protects individuals from unreasonable private searches through the use of judicial power to exclude such evidence obtained from the intrusion and concluded that because the search was not under color of law, the exclusionary rule did not apply, inasmuch as the purpose of the rule is dissuade official or governmental misconduct.
We recognize that State v. Hutchinson, supra, was decided in 1977 and State v. Coleman, supra, was decided in 1985, some thirty and twenty-two years ago respectivelylong before the technological revolution in electronic communications, computers and the internet in the last ten years. These new technologies have raised privacy issues in all aspects of our cultural life which will perhaps one day require this court or the supreme court to revisit the private search question. However, the facts of this case do not warrant a re-examination of our previous decision in State v. Coleman, supra, because the discovery of the illicit images on Horton's computer was clearly by accident, and the evidence adduced does not establish that Horton had a subjective expectation of privacy, nor did he demonstrate that his expectation is one that society is prepared to recognize as reasonable and legitimate. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Horton brought his computer to Best Buy to have a hard drive installed and the computer physically cleaned. Surely it is not a far reach for a customer to expect that the computer technician might perform a cursory inspection of the computer's operation, particularly if the computer appeared to be having some problems. In a sense, the discovery of the images by the technician in this case is more analogous to a "plain view" discovery of evidence of a crime.
Even if we assumed that the Best Buy employee's opening of the "My Pictures" file was unauthorized, and that Horton had a privacy interest in the images contained in the folder, we cannot conclude that Horton thereby meets the "reasonable expectation of privacy test" standards. Horton did not exercise dominion or control over the computer images in the "My Pictures" folder because he had voluntarily relinquished control of the computer to the repair store and failed to secure the images in the folder. The images were located in the default file, which meant that it opened automatically when the "My Pictures" folder was opened. In other words, displaying the images required no conscious thought and action or intention of the technician to enter the file.
The court stated that it relied on U.S. v. Runyan, supra, a federal child pornography case, which concerned the claim that a police search conducted before a search warrant was obtained exceeded the scope of the initial private search. Appellant raises the same sort of claim, based on testimony that Fargerson viewed more images than the two Best Buy employees. In Runyan, the court stated that police do not exceed the scope of the prior private search when they examine the same materials that were examined by the private *466 searchers, but they examine these materials more thoroughly than the private parties.
The state tacitly admits that Fargerson looked beyond the first page, but contends that the pictures on the first page were enough to support the search warrant that was issued. In fact, the search warrant was based solely on the images on the first page, and copies of those first page images were placed on the back of the original affidavit to the court.
Because the search warrant was apparently based on the same images inadvertently discovered by the Best Buy employees, we conclude that Fargerson's further exploration of additional images, while constituting an arguably unlawful search, did not taint the original warrantless viewing of the images upon which the search warrant was granted. Cf. U.S. v. Grosenheider, 200 F.3d 321 (5 Cir.(Tex.) 2000). Accordingly, this assignment is without merit.
By his second assignment of error, Horton contends that the district court erred in denying his pretrial Motion to Quash the indictment, the post-trial Motion in Arrest of Judgment and the Post-trial Motion for Judgment of Acquittal. These motions concern the statutory interpretation of the words "intentional possession" as applied to the facts of this case.
Under La. R.S. 14:81.1(A)(3) "pornography involving juveniles" includes:
The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
Appellant argues that the statute was enacted to punish those persons who produced and distributed child pornography and that the legislature did not intend to provide "the same harsh minimum mandatory sentence" (two years) for a person who merely possessed such items. Appellant also argues that the legislature did not define the term "intentional possession." Appellant cites State v. Fussell, 2006-324 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, in which the court refused to allow multiple photos to be used to support multiple counts of a violation of La. R.S. 14:81.1. Appellant then requests this court to apply "the doctrine of lenity" to find that the statute is "overbroad, ambiguous, and vague and unconstitutional as applied to the facts of this case."
The state urges that statutes are presumed constitutional, and that any doubt is to be resolved in favor of the constitutionality of the statute. State v. Brenner, 486 So.2d 101 (La.1986). The party challenging the constitutionality of a statute bears a heavy burden in proving that statute unconstitutional. State v. Brooks, 541 So.2d 801 (La.1989). The state distinguishes Fussell, supra, because it only dealt with the constitutionality of charging multiple counts of possession of child pornography, whereas Horton was only charged with one count.
Assignment of Error No. 3 also concerns the interpretation of the words "intentional possession." The appellant, although couching his argument as one of sufficiency of the evidence, has simply adopted the arguments made under Assignment of Error No. 2 and contends that "intentional possession" should be interpreted to mean more than simple possession, as opposed to situations involving a person producing or distributing such photographs.
Appellant has not raised a true sufficiency argument under the familiar standard in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in which the evidence is viewed, for purposes of *467 sufficiency, in the light most favorable to the prosecution. In this case, Horton is not even arguing that he did not possess child pornography on his computer hard drive. Thus, the real issue for both Assignment of Errors Nos. 2 and 3 concern "intentional possession."
La. R.S. 14:81.1(A)(3) unambiguously states that "pornography involving juveniles includes the intentional possession . . . or possession with intent to sell or distribute. . . ." Thus, there appears to be no mistake by the legislature in intending to punish not only possession with intent to sell or distribute, but also merely "intentional possession." Additionally, the words "intentional possession," taken in their usual sense, mean that the individual knowingly and voluntarily possessed the pornography, in contrast to circumstances where a person downloads images from the internet without realizing that some images included in the download were child pornography. Appellant has offered no evidence to show that the two-year minimum sentence for the crime of pornography involving juveniles somehow shows that the legislature could not have meant to apply that length of sentence to someone who "merely" intentionally possesses child pornography. This assignment is without merit. Likewise, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of pornography involving juveniles were proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132.
The next three assignments of error arise out of motions regarding the defendant's sentence. Horton contends the trial court erred in denying his motion to depart downward from the statutory minimum sentence of two years without benefits, that the actual seven-year sentence imposed is excessive and the trial court erred in denying his motion to reconsider sentence.
The sentencing range for "pornography involving juveniles" is imprisonment for not less than two years nor more than ten years, without benefit of parole, probation or suspension of sentence. La. R.S. 14:81.1(D). The court imposed a seven-year sentence on Horton, who was 62 or 63 years old at the time.
With respect to a downward departure from the two-year minimum mandatory sentence, Horton argues that "because of unusual circumstances" he was a victim of the legislature's failure to assign a sentence that was meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. He notes a similar federal offense has no minimum sentence for possession of child pornography. Horton lists five items in support of his "character, health and culpability." He has been gainfully employed by the state for over 20 years, performing a "valuable service" working for the State Office of Family Support. He is held in "high regard" by all his coworkers. He also asserts that he is not a danger to anyone in the community, and he points out that at age 64, he suffers from "severe emphysema, and end stage COPD and is not in good overall health." Horton also points out that this is his first felony conviction and that a misdemeanor conviction for contributing to the delinquency of a juvenile occurred 16 years ago. Finally, under the heading of "character, health and culpability," he asserts that the possession of pornography in his home was not limited to child pornography because he had a large amount of adult porn mixed in with the child pornography.
Unlike the federal crime for this offense, the statute prescribes the same penalty *468 range for those individuals who merely possess child pornography as for those who produce and sell it, whereas in the federal system the penalty for distribution is much greater. Horton correctly points out that there was no evidence that he sold, distributed, or possessed with intent to distribute, and that there was no evidence that he produced any child pornography. By an analogy to drug cases in which the legislature has mandated less severe sentences for individuals who possess illegal drugs as compared to those who sell illegal drugs, he argues that the legislature failed to provide a different penalty for individuals who merely possess child pornography versus those who produce and sell it. Lastly, he argues that a probated sentence for an individual who merely possesses child pornography is "a meaningful, serious sentence" and he argues that the search of his computer by the Best Buy employees was a "gross invasion" of his privacy.
Finally, Horton argues that the sentencing judge did not comply with Article 894.1 and the sentence should be set aside and remanded for further proceedings and resentencing. Alternatively, Horton argues that this court should vacate the sentence and impose a reasonable sentence which Horton argues is probation. Horton notes that he has been in jail since July 5, 2006. Horton notes that the maximum sentence is ten years, that the statute is primarily designed to punish persons who produce and distribute child pornography, and that the worst offenders are the ones who should receive sentences on the high side of the sentencing range. According to Horton, he is not one of the worst offenders and should not receive a sentence on the high side of the sentencing range.
In support of the trial court's sentencing choice, the state argues that Horton had saved hundreds and hundreds of images of child pornography on his computer, as well as possessed "several instances of child pornography" on a floppy disk labeled "My Favorites." The state also notes that it presented the testimony of a young man who had been victimized by Horton in 1990. The boy and his family were tenants in the other side of the duplex which Horton owned and lived in, and the state asserts that "in the fashion of pedophiles," Horton made friends with the boy and his family. Then, after establishing a habit of inviting the boy to watch cartoons, Horton began to introduce pornographic movies to the boy who was nine years old at the time. Although the boy testified that Horton never touched him inappropriately, the boy stated that Horton would place him on his lap, and that Horton would touch himself. Horton also allegedly talked to the boy about anticipated sexual activity between Horton and Horton's girlfriend, and indicated that the boy would be able to watch them and join in the future. Horton also gave the boy a picture of a nude woman in a sexually suggestive pose. The victim testified that as a result of Horton's actions the victim had to undergo repeated counseling, that he had problems in his relationships, and that it was hard for him to sit with his back to people.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La. App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, *469 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App. 2 Cir. 1/28/04), 865 So.2d 280, writ denied, 04,057 (La.9/24/04), 882 So.2d 1165.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App. 2 Cir. 2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2 Cir.1993); State v. Russell, 40,526 (La.App. 2 Cir. 1/27/05), 920 So.2d 866. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof that the defendant committed the other offenses. State v. Jones, 31,569 (La.App. 2 Cir. 12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42.
As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Brisco, 33,179 (La.App. 2 Cir. 4/5/00), 756 So.2d 644, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 749; State v. Grissom, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2 Cir.1991).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Dunn, 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2 Cir. 1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Haley, 38,258 (La.App. 2 Cir. 4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are *470 viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
The trial judge stated that she had reviewed the sentencing guidelines and the Code of Criminal Procedure Article 894.1, and had heard all of the testimony and statements made at the sentencing hearing; she also had reviewed letters and other documentation submitted to the court, and had heard all arguments from both the state and defense counsel.
Judge Emanuel stated that she had considered the following factors: the nature of the defendant's prior misdemeanor conviction, although many years ago; his work history and life experience; and his age and health concerns. The court also indicated that she had looked to the nature and seriousness of the offense, along with all other relevant factors to be considered. She then sentenced Horton to serve seven years at hard labor without benefits and ordered him to register as a sex offender.
Judge Emanuel's reasons for sentencing show that Horton's prior misdemeanor conviction weighed heavily in her sentencing choice. Horton's work history, as well as his age and health concerns, are somewhat favorable to a lesser sentence. Thus, when we consider that maximum sentences or near maximum sentences are generally reserved for the worst offenders, it is clear that the sentencing court distinguished Horton's case from any other case involving only possession of pornographic images based on the prior misdemeanor conviction. Although the conviction took place 16 years prior, the acts described by his victim could have resulted in felony charges against Horton. See La. R.S. 14:81, Indecent Behavior with Juveniles. Plainly, there is a major difference between possessing pornography, including child pornography, and taking actions with a child like those underlying the misdemeanor conviction.
Although the sentence is severe, we cannot say that the sentence shocks our sense of justice. Considering Horton's involvement with pornography over a long period of time, including child pornography, and including the acts disclosed concerning his former misdemeanor conviction, we affirm the sentence.

Conclusion
For the reasons stated above, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The Fourth Amendment proscribes only governmental action. It is "wholly inapplicable `to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'" United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (quoting Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)).
[2] State v. Coleman, 467 So.2d 542 (La.1985); State v. Clark, 456 So.2d 1012 (La.1984).